Stultz & Blair *et al. v.* Fleming & Bussey *et al.*

1. It is unnecessary for assignors to state in their deed of assignment for creditors that they are "failing or insolvent debtors."
2. That the law allows a reasonable compensation for the assignee without a provision therefor in the assignment, does not render the assignment invalid when the amount of such compensation is fixed therein. If such fixed provision be unreasonable, it can be reduced by the court on settlement with the assignee. If relied upon as a circumstance to prove fraud, it can be submitted to the jury on the trial of that issue.
3. It is not necessary for assignors in their schedule of creditors to describe the nature and character of the debts, and to state therein whether they consist of "notes or accounts, whether barred or not, whether secured or unsecured." If the schedule set forth in detail the name of, the amount due to, and the residence of each of the creditors of the assignors, no further description of the debts is required.
4. Where the tenancy of the storehouse occupied by the assignors was by the year, they could not sublet the same without the consent of their landlord; they had no estate in it, and therefore it could not have been a part of their assets. Therefore the assignment was not invalid because they failed to include in the schedule of assets the remainder of their term of tenancy to the expiration of the lease.
5. Where, two days before the making of the assignment, the assignors drew checks in favor of some of their creditors for a certain amount of money deposited in banks to their credit, and these checks had not been presented and paid when the assignment was made, but the assignors did not know this, the failure to place this money in their schedule of assets did not *per se* render the assignment void
   (*a*) If this were done for the purpose of defrauding, hindering or delaying creditors, it would void the assignment. This and kindred questions are for the jury, under the evidence and proper instructions from the court

6. The bulk of the property having been sold prior to the hearing, under interlocutory orders, and the court, in its order disposing of the case, having made provision for the retainment and protection of the assets until the final trial, thereby virtually making the assignee the receiver of the court, the plaintiffs are uninjured, and no ground for their complaint of the refusal of the court to appoint a receiver appears.

July 22, 1889.

Assignments.  Debtor and creditor.  Fraud.  Practice.  Before Judge RONEY.  Richmond county.  At chambers, February 12, 1889.

On December, 31, 1888, Fleming & Bussey, partners in trade, for the purpose of making a division of their assets among their creditors, conveyed to Wm. D. Tutt, as assignee, the following property :  One half undivided interest in 412 acres of land known as the Collins place, that interest having been purchased by Tutt at an administrator's sale, and sold by him to the assignors and bond for title given on December 1, 1888.  Also 380⅔ acres of land known as the River place, purchased by the assignors from Tutt and bond for title taken on December 1, 1888, Tutt having, on November 1, 1887, bought from Nathan Bussey, who had bought from Tutt as executor of Mary A. Tutt ; this land being conveyed subject to a mortgage lien of Tutt to Nathan Bussey, of which the assignors had notice, and which is to be paid off with the purchase money due by them to Tutt.  Also 328 acres of land formerly owned by Mary A. Tutt and sold by W. D. Tutt, executor, to R. F. Freeman on September 4, 1888, and on the following day sold by Freeman to Tutt, and by him, on December 1, 1888, sold to the assignors and bond for title given them ; less 50 acres of the tract, which, on December 8, 1888, was bought back by Tutt from the assignors, and a credit therefor entered on their note to him and a similar entry made on his bond for titles to them.  Also a saw-mill, steam-engine, etc., located on the plantation

of Mrs. S. L. Tutt in Lincoln county.    Also a mule and dray, and all the stock of goods of the assignors in their store in Augusta and in a warehouse there, together with moneys, books of account, mortgages, notes, deeds, choses in action, and all other evidences of indebtedness due the assignors, more particularly described in their inventory and schedule attached and sworn to at the time of the execution of the indenture.

The conveyance was made in trust for the following purposes : (1) To pay all expenses incident to carrying out the assignment, the fees and commissions of the assignee (which are $1,000, besides ten per cent. on claims which he may collect by law), all outlays in taking care of the property and compromising rent of storehouse, insurance, taxes, clerk-hire, auctioneer's fees, incidental expenses, and traveling expenses of the assignee.    (2) To pay Fleming, Thomas & Co., bankers, $3,400 due them by the assignors.    (3) To W. D. Tutt $11,065 due him on promissory notes of the assignors. (4) To Lombard & Co. $284 on a note of the assignors. (5) To Charles Bussey $3,491.24, borrowed money. (6) To divide the entire net proceeds of the aforesaid assets remaining after the payment of these preferred debts and expenses, etc., among all the outstanding creditors of the assignors, a list of them with their residences and the amounts due them, so far as known, being attached and legally sworn to at the time of the execution.    The assignee was authorized to publicly sell the real estate after advertisement ; and to sell the personalty publicly or privately on such terms as seemed best to him ; and to execute a conveyance which should pass the title, etc.; the proceeds of sales to be held subject to liens on property sold until discharged ; and the assignee was empowered to settle or carry on any suit against the assignors affecting the property, the expense of which was to be paid out of the assets.    Then fol-

lowed the schedules referred to, each of which was sworn to separately by both of the assignors.

Proceeding under the act of October 17, 1885, the plaintiffs, who are non-preferred creditors of the assignors, presented their petition, attacking the assignment, making the assignors, the assignee and the preferred creditors parties defendant, and alleging, in brief, as follows: The assignment is void. It does not convey all the property of the assignors. It does not show or allege that they are insolvent. The schedule of assets contains only 278 acres of the 328 acre tract conveyed by Tutt to the assignors. The schedules are not sufficiently definite to enable creditors to ascertain if the goods sold by them are among those assigned. The schedule of creditors does not contain the names of all. of them, and does not set forth with sufficient clearness, the kind or character of the claims, whether by note,. account, judgment, etc. These schedules were not attached at the time of the execution of the assignment,. but were afterwards completed. Certain money in the, bank of Fleming, Thomas & Co. to the credit of the assignors is not conveyed by the assignment. Checks, against this deposit were drawn by the assignors on the, same day the assignment was executed, but were nott then paid. The provisions as to the payment of ten. per cent. on claims collected by the assignee in addition. to his compensation of $1,000, and the further provision as to counsel fees, invalidate the assignment. There is a secret trust in favor of the assignors. The assignment shows on its face that it is collusively executed to defeat creditors; it was. made to hinder, delay and defraud them; and this was known to the assignee, who was its draftsman. The Collins land was sold by Tutt to the assignors for $4,120; when he bought it, he paid only $576.80, which was all it was worth; it has recently

v 83-2

been on the market at $600. The River place he sold them for $5,806; but it is not worth more than $1,000. The other land, known as the Davie land, is reported in the schedule as 278 acres at $2,155; but it is not really worth more than $500. The saw-mill, steam-engine, etc. were sold by Tutt to the assignors for $1,750; these machines are old and not worth more than $260; and their purchase was not *bona fide*, because the assignors were not in the mill and farming business but in the grocery trade, and must have known that they were not going to pay for them, or that they could not do so, when they owed about $50,000 to their creditors. The preference to Tutt, because of inadequacy of consideration and because there is no real debt due him, is fraudulent against petitioners; but if valid, Tutt has not parted with the title to the land, and ought to be made to seek payment therefrom, the other assets being the only property to which creditors can look for payment. No such debt as the one preferred as due Charles Bussey really exists. The assignee is unable to respond to a judgment against him; he is unfamiliar with the grocery business, is the attorney for the assignors, on confidential relations with them; etc. The petitioners pray for judgments for the amounts of their claims; and that the court will decree the assignment to be void, and set aside the preferences, and appoint a receiver, and enjoin the defendants from changing the present status.

The court granted a restraining order, by which the assignee was required to keep a faithful account of his actions; but he was allowed to make sales of the stock for cash, and to pay his employés and counsel their salaries and fees as they become due, and was prohibited from paying out further money, but directed to deposit in bank such as he received.

From the answers of the defendants (which appear at considerable length in the record) the following brief

statement is here made : The assignment is valid and lawful. It conveys all the property of the assignors, both as partners and as individuals. The fifty acres omitted from the 328 acre tract of land had been purchased by Tutt and were not owned by the assignors; the balance, 278 acres, was placed in the schedule. The schedules are definite and particular and full and complete; any creditor can readily ascertain, by casual inspection, the presence of any goods sold by him. They were attached at the time of the execution of the assignment, and are still in the same form and condition that they were then. The checks against the deposit in the bank of Fleming, Thomas & Co. were drawn two days before the assignment was made, during business hours; and when the assignment was prepared, an account of the money in the bank belonging to the assignors was taken, and that amount was included in the schedule. The bank delayed payment of one or more of the checks when presented until it was ascertained that they were drawn prior to the making of the assignment. The compensation provided for the assignee is but reasonable pay for his services. Respondents deny that there is any secret trust or reserved benefit, or any collusion or fraud; and assert that the assignment was made in good faith solely for the purposes expressed in it. It was their honest intention to comply with both the letter and spirit of the law in preparing the schedules; and if the name of any one or more creditors be omitted therefrom, such omission was wholly inadvertent and unintentional, and such claims were trifling in amount. Such omission grew out of the fact that, in so large a business, including such a great number of debtors and creditors, it is a practical impossibility to make a schedule that will be perfect and not overlook some one who has a claim. The purchase of the lands and the saw-mill, etc. from

Tutt is alleged to have been *bona fide*, and the prices charged therefor to be no more than their value, the lands being valuable for lumber, which it was intended the machinery should be used for sawing and preparing for market. Tutt believed, when he made the sales, that Fleming & Bussey were solvent and able to carry out their contracts. All the charges of the petition impugning these transactions are denied. Tutt denies that he is unable to respond to a judgment that may be rendered against him, and alleges his entire solvency. The debt to Charles Bussey is *bona fide*, for money borrowed and used to pay for merchandise bought by the firm. They had been doing their banking business with Fleming, Thomas & Co., and on December 31, 1888, owed them $3,400 for cash advanced in good faith and in the course of business, without knowledge that the assignors were financially embarrassed. When the bank opened on the day the assignment was executed, they had to their credit on deposit at the bank $737,47. Before the bankers knew of the assignment, they had cashed some checks; after learning of it, they cashed others on the representation of the assignee that he did not claim the funds against which the checks were drawn; this left a balance of $15.35, which was placed to the credit of the assignee. All of the checks were drawn on or before December 29, two days before the assignment.

On the hearing before the chancellor, evidence was introduced by both sides, and in most respects it is conflicting. It was shown, however, for the petitioners, that Fleming & Bussey had leased their store for $1,000 per annum and had given notes for the last year's rent, which would expire on October 1, 1889; but that these were not on the schedule. The assignee kept possession of the store and paid rent. The schedules did not include $256.90 due for State, county and municipal taxes,

nor a bill for $2.68 and another for $38.13, and perhaps another for $209.34.    It was admitted that the notes of the assignors to Tutt, evidencing his preferred debt were payable, two of them one day after date, and the others in January, 1889.

The judge rendered a decision, reciting that the bulk of the property has been sold and the proceeds deposited in bank, as required by the restraining order heretofore granted; that he is satisfied that the rights of all parties can be as fully protected by the continuance of that order as hereafter enlarged.    He therefore adjudges that the order remain of force and be made applicable to all future proceeds of the property and all collections made, which are to be held to abide the final decree to be rendered on the trial; and that, except for salaries due employés engaged in selling the stock, no payments be made except upon the order of the court.    The appointment of a receiver is denied.

The petitioners excepted on the grounds that the court erred in not setting aside the assignment and appointing a receiver; in not requiring the assignee to give bond; in not deciding the assignment to be invalid because of the failure to set out therein that the assignors were failing or insolvent debtors, and because of the provision for the payment of attorneys' fees, and for the power in the assignee to compromise suits affecting the property, such powers being in law a reservation for the benefit of the assignors, enabling the assignee to give preferences by settling with creditors at different amounts, and tending to hinder and delay creditors. Also in not holding the assignment to be invalid because of the power to the assignee to sell the personal property on such terms as seem to him best, such power tending to hinder and delay creditors by allowing the assignee to sell on credit and to continue the business indefinitely; and because the schedule of assets is in-

definite and not so specific that creditors could see what has been assigned and whether the goods they sold are therein included; and because the schedule of creditors fails to give a full and complete inventory of all indebtedness of the assignors of every kind, an inspection of it failing to show the character of the debts, whether secured or not, whether notes or accounts, whether barred or not, and what amounts; and because the amount due under the store lease, and the taxes and other debts above mentioned, are not included in the proper schedule; and because of the facts already stated as to the money on deposit in the bank, the checks drawn against the same and paid, and the balance of $15.35 placed to the assignee's credit, the petitioners contending that the title to the fund did not pass by the drawing and delivery of the checks. The court was specially requested by petitioners to hold as stated.

W. K. MILLER, J. S. & W. T. DAVIDSON, C. H. COHEN, HARPER & BRO., CHAS. Z. MCCORD and H. PHINIZY, for plaintiffs.

FOSTER & LAMAR, TWIGGS & VERDERY and W. H. FLEMING, for defendants.

SIMMONS, Justice.

The court did not err in refusing to set aside the assignment in this case upon the grounds set out in the bill of exceptions. Most of the grounds are mixed questions of law and fact, which it will be necessary for a jury to pass upon under proper instructions from the court, before the assignment can be declared invalid. Upon the questions of pure law made in the record, the court did not err, in our opinion, in refusing to set aside the assignment on these grounds.

1. It is unnecessary, in our opinion, for the assignors to state in the deed of assignment that they are " fail-.

ing or insolvent debtors." There is nothing in the act which requires them so to state.

2. Nor does it render an assignment invalid if the assignors provide therein for a fixed compensation for the assignee. Whether that provision is in the deed of assignment or not, the law will allow a reasonable compensation; and the fact that the law allows such compensation without this provision in the assignment, does not render the assignment invalid when it is provided for in the assignment. If the provision for compensation is unreasonable, it can be reduced by the court on its settlement with the assignee. If relied upon as a circumstance to prove fraud, it can be submitted to the jury on the trial of that issue.

3. Nor is it necessary, in our opinion, for the assignors, in their schedule of creditors, which schedule they are required by law to file, to describe the nature and character of the debts, and to state therein whether they consists of "notes or accounts, whether barred or not, whether secured or unsecured." The act requires that the "schedule shall set forth in detail the name of, the amount due to, and the residence of, each of the creditors of the assignor." It does not require any further description of the debts.

4. Nor did the court err in refusing to set aside the assignment "because the assignors failed to include in their schedule of assets the term they owned under the lease from Mrs Horton, administratrix, of the store they occupied, from December 31st, 1888, the date of their failure, to October 1st, 1889, the date of the expiration of the lease." It appears that the renting of the storehouse was by the year. If it was, the tenant could not sublet the premises without the consent of the landlord. If they had assigned this unexpired term, the landlady might not have agreed to it. She might not have desired the assignee as a tenant. If the renting was by

the year, the tenant had no estate in it, and therefore it could not have been a part of the tenant's assets. The landlady could have ejected the tenant at any time when the rent was due and unpaid. We therefore do not think the assignment was invalid because the assignors failed to put this in their schedule.

5. The assignors had a certain amount of money deposited in bank to their credit. Two days before they failed and made this assignment, they drew checks on the bank for this money, in favor of some of their creditors. It appears that these checks had not been presented and paid when the assignment was made, and that the assignors did not know that they had not been paid. It is contended that the assignment was void because the money was not placed in the schedule as assets. We do not think the failure to place this money in the schedule of assets renders the assignment void *per se*, under the circumstances. Courts differ as to whether, after checks have been drawn against money in bank, the money belongs to the holders of the checks or to the drawers of the checks. These assignors seem to have taken the former view, and we cannot hold that their deed of assignment is void because of a mistaken view of the law, if their view is wrong. Where able and learned judges, who have devoted their lives to the study of the law, differ upon this question, certainly the act and opinion of unprofessional men cannot be held to be fraudulent when they follow one line of decisions. Of course if this was done for the purpose of defrauding, hindering or delaying the creditors, it would void the assignment. Of this and kindred questions in the case the jury must be the judges, under the evidence and proper instructions from the court. The other questions made in the record were questions of mixed law and fact, and it is unnecessary to decide them now, as they can be determined on the final trial before the jury.

6. Upon a review of the whole case, we think the trial judge made a wise disposition of it. The bulk of the property had been sold prior to the hearing, under interlocutory orders passed before the hearing. In his order disposing of the case, the judge directed that the proceeds of the sale should be placed in bank by the assignee, and not paid out to any one except by order of the court, and that all of the proceeds be held up except $500, which he directed paid as compensation to the assignee, and certain other amounts the salaries of the employés in the store, until the final trial before the jury. This virtually made the assignee the receiver of the court. The court took possession of the whole property or its proceeds, and will retain it until the final trial. We cannot see that the plaintiffs in error are in any way injured by this action of the court, and we see no ground for their complaint of the refusal of the court to appoint a receiver.      *Judgment affirmed.*