## BASS *v.* WEST.

1. The owner of land adjoining that of another has a right, on giving notice of his intention to do so, to make all proper and needful excavations for purposes of construction even up to the line; but he must use ordinary care and take reasonable precautions to sustain the land of the adjoining owner.

2. The owner of a leasehold estate may maintain an action against any one who wrongfully interferes with his possession.

3. In case of a tortious eviction from leased premises, the measure of the lessee's damages would generally be the value of the premises. for rent during the remainder of his term.

4. Where the lessee conducted an established business on the leased premises, the value of the good-will of the business and the loss of profits occasioned by the eviction, if ascertainable with a reasonable degree of certainty, may be considered in estimating the value of the premises for rent.

5. A lessee can not, without the consent of his landlord, transfer his lease; and the transferee in such a case would be a mere intruder and subject to be summarily ousted by the landlord.

6. Bare possession of real estate gives a right of action against any one wrongfully interfering with such possession.

7. The principles above announced control the case. In the light thereof, some of the charges of the court were erroneous, and a new trial should be had.

Argued March 17,— Decided May 16, 1900.

Action for damages. Before Judge Harris. City court of Floyd county. March term, 1899.

*Dean & Dean,* for plaintiff in error.
*Fouche & Fouche,* contra.

COBB, J. Walter B. West brought suit against James L. Bass. The plaintiff's petition was, in substance, as follows: On July 23, 1898, petitioner was doing business in the name and style of the "West Cycle Company," and was in possession of a storehouse and lot fronting on Broad street, in the city of Rome, which lot was joined on one side by a storehouse and lot owned by the defendant. Petitioner's tenancy and right of possession does not expire until May 1, 1899. On or about the —— day of ——, 1898, defendant removed the building from his lot, and, by way of preparing to rebuild thereon, "dug down under and by the side of the northeast wall of the building occupied by petitioner, and said wall, being thereby undermined and deprived of its lateral support, collapsed and fell, and the building was thereby ruined and petitioner was compelled to vacate the same." Defendant neglected and refused to repair the building of petitioner, and in August, 1898, in total and wanton disregard of petitioner's rights, entered upon said premises and totally destroyed and removed said building and evicted petitioner from the premises, and refuses to restore or repair the building, and the lot is now vacant. The storehouse occupied by petitioner was centrally located on the most public street of the city, and was very valuable and profitable as a place of business, and especially so for the business carried on by petitioner. This business consisted of buying, selling, renting, repairing and mending bicycles, which business was very profitable, petitioner clearing the sum of $50 per month therefrom. The destruction of the building has entirely broken up the business, and petitioner was thereby damaged in the sum of $225. Petitioner was compelled to vacate the building suddenly and without warning, and has thereby

been damaged in the sum of $125 for costs of moving, and breakage and destruction of his stock, tools, furniture and fixtures. The building was near a steam plant, from which petitioner procured power free of charge to run a steam engine that is necessary for the proper and effectual conduct of his business. By reason of the removal he will be compelled to purchase an electric motor at an expense of $50, and pay the sum of $9 per month to run the same, by reason of which facts he has been damaged in the sum of $150. Petitioner had established a trade and good-will in his business, which was worth the sum of $500, and petitioner has been damaged that sum by the removal.

The defendant filed demurrers, both general and special, to the petition. The special demurrers were: (1) The allegations as to loss of profits are too remote and speculative, and are not proper charges against defendant. (2) The allegations as to cost .of removal and breakage and destruction of stock, etc., are too general. (3) In reference to the loss of the use of the power from the steam plant, plaintiff fails to allege that he has been damaged thereby, or that he has sustained any damage. (4) The allegations as to loss of good-will are too remote and speculative, and do not constitute a proper charge against the defendant. The plaintiff amended his petition to meet the second and third grounds of the demurrer; and, this having been done, the court overruled the demurrers. To this ruling the defendant excepted pendente lite. The defendant thereupon answered, denying the material allegations of the petition, and averring that in preparing to rebuild upon his lot he in no way disturbed or undermined the foundation of the building occupied by plaintiff, and that the building did not fall by reason of the lateral support having been taken therefrom; that plaintiff voluntarily removed therefrom, and defendant permitted him to occupy a large and well-equipped storeroom in another part of the city, free of rent, for several weeks, and afterwards rented it to him at a very low rental; that the latter store is a much more desirable location for plaintiff's business than the place from which he removed; that the building was not removed by defendant until after plaintiff had abandoned

it, and not until the city authorities had condemned it; that in removing the building defendant acted by and with the consent of the agent of the owner; that the building did not fall but only gave way a little, and plaintiff could have repaired the same by the expenditure of a small sum; that if plaintiff is entitled to recover anything he should recover only an amount equal to that necessary to have repaired the building; that the damages claimed by plaintiff are too remote and are not capable of proof. The case went to trial, and after evidence introduced the jury returned a verdict in favor of the plaintiff for $180. The defendant filed a motion for a new trial, which was overruled, and he excepted.

1, 2. According to the allegations of the petition, the plaintiff was in possession of the premises in question as a tenant, for a term of years, of the owner. He alleges that the defendant dug down and undermined the wall of the building and deprived it of its lateral support, and that it collapsed and fell. And further, that the defendant, some time thereafter, totally destroyed and removed the building and evicted petitioner therefrom. As against a general demurrer, the petition sets forth a cause of action. Any wrongful interference with the possession of a tenant of real estate gives to him a right of action against the wrong-doer. 1 Sedg. Dam. § 69; 3 Suth. Dam. § 1012. What duty did the defendant owe the plaintiff in respect of the matter in question? Section 3048 of the Civil Code provides: "The owner of adjoining land has the right, on giving reasonable notice of his intention so to do, to make proper and needful excavations even up to the line for purposes of construction, using ordinary care and taking reasonable precautions to sustain the land of the other." Under this section, before making any excavations at all, the defendant should have given the plaintiff notice of his intention to do so; and, even after notice given, it was incumbent on the defendant to have used ordinary care in the prosecution of the work and to have taken reasonable precautions to prevent the plaintiff's wall from falling. The petition does not allege failure to give notice, and does not in terms allege a failure to use the care required by the statute after having given the notice, but it does

allege that the wall was undermined and deprived of its lateral support. If the averments of the petition are construed to mean that the defendant actually "undermined" the wall, that is, dug under the wall into the adjoining lot, then no allegation as to want of ordinary care in the way the work was done would be necessary, for such conduct would make the defendant a trespasser and liable as such, no matter what degree of care he exercised. If, on the other hand, the petition be construed to mean that the wall was undermined in the sense that the defendant dug away the lateral support by making an excavation on his own land, then the plaintiff should have distinctly alleged that the defendant failed to exercise a proper degree of care in the execution of the work, and had the point been made by special demurrer that he did not do so, it would have been well taken, but as against a general demurrer the allegations are sufficient. Moreover, the petition alleged that the defendant, after the collapse of the wall, instead of repairing the damage already done, entered upon the premises and totally destroyed and removed the building and evicted the plaintiff. There was certainly no warrant in law for such a proceeding as is in the petition alleged. The averments therein make a case of wanton destruction of the building and of a wilful and deliberate deprivation of the plaintiff's right of possession. In this connection we refer to so much of the evidence as relates generally to the cause of action.

The evidence showed that the sill on which rested the supports of the building on the side the excavation was made was rotten; that the earth from the side of the sill for several feet was removed and the rotten sill plainly exposed to view; that it either was, or could easily have been, seen by the defendant, who himself superintended the excavation; that, notwithstanding the condition of the sill, the defendant took no precautions to support the wall and prevent it from falling, but continued the excavation, when some of the supports slipped off into the ditch being dug by the defendant, which caused the roof to sag down in the middle, and some of the plastering on the side to fall. The plaintiff, being apprehensive that the building would collapse, immediately and hastily removed himself and his goods

from the building. We think this evidence warranted a finding that the defendant failed to take reasonable precautions and to exercise ordinary care, in making the excavation, to prevent injury to the building occupied by the plaintiff. We think also that the plaintiff was justified in abandoning the premises at the time he did. The case of *Harrison* v. *Kiser,* 79 *Ga.* 589, holding that an owner is not liable for the negligent work of an independent contractor in making an excavation, unless such owner gave the contractor express directions as to the manner of doing the work, or knew how it was done, knew it was calculated to injure the property of the adjoining owner, and ratified the work, is not applicable to the present case. Here the owner himself superintended the work, and knew, or ought to have known, of the condition of the sill and of the failure to use proper care in prosecuting the work after the condition of the sill became known. Counsel cite that case also on the measure of damages; but that was a case where the owner was suing for injury to the freehold, and it was held that the measure of his damages was the amount it would take to put the property in the condition it was before the injury. This, of course, can not be the rule where a tenant is suing for injury to his possession, as we shall hereafter see.

3, 4. With two exceptions, the special grounds of the demurrer were met by appropriate amendments. Those necessary to be dealt with raise the question that loss of profits and the good-will of a business can not be considered in estimating the damage in a case like the present. In case of a wrongful eviction of a lessee he can recover of the wrong-doer for the injury he has sustained. In such a case the general rule is that his measure of damages is the value of the premises for rent during the remainder of the term. If a person is wrongfully deprived of the use and occupancy of premises in which an established business is being carried on, he may recover damages for the injury done his business. He can not, however, even in such a case, recover for loss of profits and the value of the good-will of his business as such, but evidence as to these may be introduced to throw light on the value of his leasehold estate. Where the amount of the profits lost and the value of the good-will of the business can be

ascertained with a reasonable degree of certainty, they should be allowed in estimating the value of the lease for the purpose for which it was being used. In cases, however, where these elements are merely speculative and conjectural and can not be ascertained with reasonable certainty, no allowance should be made therefor. This does not mean that the amounts of these elements of damage should necessarily be reduced to an exact calculation before a recovery could be had, but there must be sufficient data to enable a jury with a reasonable degree of certainty and exactness to ascertain the loss. These views are in harmony with prior decisions of this court. In *Sturgis* v. *Frost,* 56 *Ga.* 188, it was held: " The average profits which a tradesman was making when his entire stock was seized may be considered in estimating his damage for the time, before suit, during which his stock was detained from him, and his business thereby wholly interrupted. Although the profits, as such, would not be recoverable, yet their amount, as a fact, may be considered in estimating the magnitude of the alleged outrage by defendant." The same ruling was made in *Juchter* v. *Boehm,* 67 *Ga.* 534. In *Pause* v. *Atlanta,* 98 *Ga.* 92, it was held that the holder of a lease of a house for business purposes could recover of a municipal corporation damages resulting to her business from the construction of a public improvement along the street on which the leased house was situated. In reference to the measure of the lessee's damages, Mr. Justice Atkinson says : " The measure of her damages is the injury to her property which is injuriously affected by the public improvement. . . In such a case the profits of the business are not recoverable by way of damages, but evidence that the business was profitable is admissible to illustrate and throw light upon the value of the premises for rent." It is true that in such a case as the one just referred to the city would not be a trespasser and the eviction would not be tortious. That decision rested upon the ground that a leasehold interest was property, and that the holder thereof could not be deprived of it by its appropriation to a public use, without just compensation. But the measure of compensation was held to be substantially the same with reference to the question of the loss of profits as that in cases of a tortious eviction, and followed

substantially the rulings made as to this matter in the cases above cited, which were cases of tortious eviction. The cases of *Smith* v. *Eubanks*, 72 *Ga.* 280, and *Stewart* v. *Lanier House Company*, 75 *Ga.* 582, were suits for breaches of contracts of lease, and in such cases "profits which are the immediate fruit of the contract" may be recovered as such, being capable "of exact computation" and not too remote. Civil Code, § 3789. On the general subject of recovery for lost profits, see 1 Sedg. Dam. (8th ed.) §§ 188-9; 3 Suth. Dam. (2d ed.) § 1029; 8 Am. & Eng. Enc. L. (2d ed.) 625 (3).

Applying the foregoing to the present case, we think the special demurrers were properly overruled. It was proper to allege and prove, if it could be done with that degree of certainty which the law requires, the amount of profits lost and the value of the good-will of the business, and similar elements of damage. While, as stated, they could not be recovered as such, they were nevertheless proper matters of allegation and proof in estimating the injury which the plaintiff had sustained.

5. It is contended, however, that there was no evidence from which the jury could find that the plaintiff was a tenant of the premises, and that, being a mere trespasser himself, he can not recover for the injury done to his possession. The plaintiff undertook to prove that he was a subtenant of the original tenant of the premises. The evidence does show clearly that the original tenant transferred his lease to the plaintiff, but there was no sufficient evidence to show that the landlord assented to, or had knowledge of, the transfer. The landlord was absent from the State when the transfer was made, and his agent appointed to manage the property testified positively that he had no knowledge of the transfer either at the time it was made or before the injury to the building. Taking the evidence most favorably for the plaintiff, we do not think it warranted a finding that the plaintiff was a subtenant with the consent or knowledge of the agent of the landlord. Without such consent, the tenant had no right to transfer his lease, and the transferee would be a mere intruder subject to be summarily ousted by the landlord. *McBurney* v. *McIntyre*, 38 *Ga.* 261; *Stultz* v. *Fleming*, 83 *Ga.* 14 (4). Such being the case, the plaintiff could not recover for

loss of future profits, the value of the good-will of the business, or anything which was dependent upon the future for its value, for the reason that it could not be ascertained how long the landlord would suffer him to remain a trespasser on his premises. 3 Suth. Dam. (2d ed.) § 1012.

6. It by no means follows, however, that the plaintiff is cut off from recovering any damages whatever. "The bare possession of land authorizes the possessor to recover damages from any person who wrongfully in any manner interferes with such possession." Civil Code, § 3876. The possession of the plaintiff was actual and exclusive; and "such possession is sufficient to support the action of trespass. Even though this possession may have been illegally acquired, it is sufficient." 26 Am. & Eng. Enc. L. (1st ed.) 582, and numerous cases cited in notes. See also 3 Sedg. Dam. (8th ed.) § 931, and cases cited; 3 Suth. Dam. (2d ed.) § 1012. The defendant was himself a trespasser. He had no more right to interfere with the possession of the plaintiff than the plaintiff had to the possession. For such wrongful interference the plaintiff can recover, but his measure of damages would be the injury to his possession and such damage as was the immediate result of the eviction. For whatever damages he sustained growing directly out of the eviction he can recover, and only those.

7. The foregoing disposes, in effect, of all the questions made in the case. The court erred in charging upon the hypothesis that the plaintiff was a tenant of the premises, for the reason that there was no evidence to warrant it; and also erred in submitting to the jury the consideration of the value of lost profits, good-will of the business, and the value of the steam privilege. Let the case be tried again. If on another trial it should appear that the plaintiff was in fact a tenant with the consent of the landlord, then his measure of damages would be as above indicated. If the evidence is substantially the same as the present record discloses, he can recover for nothing except the injury done to his possession, which was for no fixed time; and liable to be terminated at any moment, and for the expenses directly incident to the tortious eviction.

*Judgment reversed. All concurring, except Fish, J., absent.*