GEM THEATRE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9264.   Promulgated September 27, 1927.

Item determined to be part of petitioner's gross income.

*George H. Moore, Esq.*, for the petitioner.
*J. W. Fisher, Esq.*, for the respondent.

The Commissioner determined a deficiency in income and profits tax for the year 1921 in the amount of $6,532.39.   The determination was made by the rejection of a claim filed by the petitioner for the abatement of $6,532.39, forming part of a larger assessment made by the Commissioner in October, 1924.   The petitioner alleges that the Commissioner has erroneously increased its gross income for 1921 by $16,600 claimed to be money received by its individual stockholders from the sale of personal property owned by said stockholders.

FINDINGS OF FACT.

The petitioner was a corporation organized in 1911, with a capital stock of $2,400, under the laws of the State of Illinois.   It is now dissolved.   During 1921 and until the date of its dissolution, the petitioner operated three motion picture shows in Cairo, Ill., one of which was known as the Gem Theatre.   The Gem Theatre was advantageously located for the purpose and operated continuously.

The other two theatres operated only part time. Prior to incorporation, Augustus Botto and Al Meyers were engaged in the motion picture business as equal partners. With the exception of one qualifying share, the outstanding stock of the petitioner was owned one-half each by Botto and Meyers, who during 1920 and 1921, held the offices respectively of president and secretary-treasurer. Under date of April 26, 1921, a contract was made to sell the property of petitioner to I. W. Rodgers, and H. B. McFarling. At that time the Gem Theatre had been operated nearly 11 years. The first lease of the Gem Theatre property was a written lease dated May 16, 1910, naming Botto and Meyers as lessees, and containing a covenant against assigning or subletting without the written assent of the lessor.

The report to the Secretary of State of Illinois made by Botto, Meyers and Alexander Wilson, as commissioners authorized to open books of subscription to the capital stock of the Gem Theatre Co., states that the total authorized capitalization was subscribed for and that the capital was paid in property appraised as follows:

One moving picture machine; one spot light; one flood light; one mercury rectifier; one marble front; 512 chairs; electric wiring and fixtures; stage and scenery *and five years lease on building known as 224 and 226 Eighth Street, Cairo, Illinois*, for the sum of $2,400.00. (Italics ours.)

This report was subscribed to on April 13, 1911, and filed with the Secretary of State on April 15, 1911.

At the time of application for the corporate charter, it was the intention of Meyers to have the lease in question assigned to the corporation. At that time Botto and Meyers applied to the lessor to consent to the transfer of said lease to any corporation.

The books of the petitioner were imperfectly kept in the early period of its operations and up until it commenced to make money. As early as 1911, however, the petitioner kept a record of receipts, deposits and disbursements. No separate account for the lease of the Gem Theatre property was kept on the petitioner's books. From 1911 to 1921, the rent of the Gem Theatre lease was entered as an expense on the corporate books.

Prior to the incorporation of the partnership business of Botto and Meyers, its bank account stood in the name of Botto & Meyers. For some years after the incorporation and as late as June 1, 1917, the bank accounts of the business remained in the name of Botto & Meyers. The receipts of the Gem Theatre Co. were deposited in these accounts. The principal account of the business was carried in the Alexander County National Bank of Cairo, Ill. About September 26, 1917, the Alexander County National Bank issued checks in the name of the Gem Theatre Co. and this practice was thereafter

uniformly followed in all its bank accounts. The rent for the theatre lease during 1918, 1919, 1920, and 1921, was paid by checks of the petitioner. These checks were paid out of the petitioner's funds. The lessors' receipts, however, were always made in the name of Botto & Meyers.

The lease was not considered by Meyers as a part of the corporation's assets. It was appraised as part of the paid-in capital of the corporation as a formality to receive a charter from the State.

The second lease on the Gem Theatre premises is dated August 31, 1916. It also names Botto and Meyers as lessees and contains a covenant against assigning or underletting without the written assent of the lessors. The term of this lease was from September 1, 1916, to September 1, 1919. The rental called for thereby was $120 per month until March 1, 1917, and $125 per month from March 1, 1917, to September 1, 1919. A notation on the back of said lease states that it is extended to September 1, 1922, at a rental of $140 per month.

The material provisions of the contract to sell dated April 26, 1921, read as follows:

Witnesseth: This contract made and entered into this 26th day of April 1921, by and between *Gem Theatre Company, Augustus Botto* and *Al Meyers* of Alexander, Illinois, parties of the first part, and *I. W. Rodgers* of Butler County, Missouri, and *H. B. McFarling* of New Madrid County, Missouri, parties of the second part.

For and in consideration of the stipulations hereinafter set out, parties of the first part hereby covenant and agree to sell, assign, convey and deliver to parties of the second part; the following property known as and used in connection with the Gem Theater in the City of Cairo, Illinois, where now situate, and which consists of the following, to-wit; the entire contents of the building, including the front wall of said building, stage, scenery, seats, ventilating wall and ceiling fans, picture machines, booth, screens, mercury arc rectifier, rheostadt, ticket booth and all other articles kept or used in connection with the operation of said Gem Theater, including everything in or belonging to said building with the specific exceptions of the ground, walls other than the front wall, floor, ceiling, roof and heating plant, toilet, wash basin and piano (Wurtlitzer) and to furnish and deliver to parties of the second part an assignable lease upon the building proper providing for a lease of said building for a term of not less than five years; at a rental of not to exceed $200.00 per month. Said lease to take effect on the 1st day of June 1921. It is further understood and agreed upon that in case parties of the first part should be unable to secure the lease as hereinbefore specified, then in that event, parties of the first part are to secure the most favorable lease upon said property possible and submit same for the approval of parties of the second part, but with the understanding that should such substitute lease not meet with the approval of parties of the second part then parties of the first part will within thirty days return to said parties of the second part any and all of the consideration of this contract that may have passed.

Parties of the first part further covenant and agree to sell and deliver and assign a lease on the "Kimmel Theater" in the City of Cairo, Illinois, providing

for a lease of said building for a term of not less than nine months (9) from June 10, 1921 and at a rental of not to exceed $250.00 per month and to include all the furniture and fixtures as well as other equipment now used in connection with the operation of said theater, to second parties, who assume all of the conditions of said lease.

Parties of the first part further covenant and agree to sell and deliver an assignable lease to parties of the second part, on the Cairo Opera House, providing for a lease of said building and equipment used in connection therewith for a term of not less than two months from June 1st, 1921 and at a rental of not to exceed $150.00 per month.

Parties of the second part for and in consideration of the stipulations herein set out and to be kept and performed by parties of the first part hereby agree to pay to parties of the first part the sum of One Thousand Dollars, the receipt of which is hereby acknowledged, to pay the additional sum of Twenty Four Thousand Dollars upon the full compliance of the conditions of this contract by party of the first part, which shall be on or before the 1st day of June, 1921, at which time parties of the first part shall deliver undisputed possession to the foregoing premises, otherwise the payment to be with-held.

Parties of the second part further agree to assume such existing contracts as parties of the first part may have with Film Companies, for the supply of films June 1st, A. D. 1921 and to reimburse parties of the first part for such deposits as they may have with said film companies; and provided further said deposits do not exceed the sum of $1500.00.

It is mutually understood and agreed that final payment upon this contract is to be made at the Cairo National Bank and that in the event parties of the first part fail or refuse to comply with all of the terms and conditions of this contract on their part, then they shall at the option of the parties of the second part refund to said parties within ten days the $1000.00 paid to them at the time of the execution of this contract. Parties of the first part agree not to engage in the Motion Picture business either directly or indirectly for a period of five years (5) in the City of Cairo.

It is further agreed and understood, that if the parties of the second part fail or refuse to pay over to the said parties of the first part, by tender of same at the office of the Cairo National Bank at Cairo, Illinois, the balance due of Twenty four thousand dollars ($24,000.00) on or before the 1st day of June A. D. 1921, this contract will become null and void, and said One Thousand dollars ($1000.00) shall be forfeited to said parties of the first part as liquidated damages.

This contract is executed in duplicate, and each of the parties hereto has a copy, and all changes and erasures were made before signing.

The total consideration paid by the purchasers, Rodgers and McFarling, was $25,000, of which $1,000 was paid as earnest money when the contract was made. The assets sold by the petitioner in the Gem Theatre originally cost it $5,912.03 and had been depreciated by $3,304.22 in prior years, leaving a net depreciated cost of $2,607.81. The Commissioner included the entire profit derived from this sale in the gross income of the petitioner.

The entire proceeds of the sale were deposited in the petitioner's funds. The initial payment of $1,000 was made by two checks of $500 each, made payable to Botto and Meyers. The remaining $24,000 of the purchase price was paid as follows: On May 31, 1921,

by check payable to Botto and Meyers for $16,666.66 and signed by Rodgers. This check was endorsed by Botto and Meyers, Gem Theatre, deposit to the Gem Theatre Co., and deposited in the bank account of the petitioner. On May 31, 1921, by check for $7,833.34, payable to Botto and Meyers, signed by McFarling. This check was endorsed Botto, Meyers, Gem Theatre. It was deposited in the bank account of the petitioner. These deposits were made by Al Meyers. Said checks were deposited in the petitioner's account in anticipation of an equal division between Botto and Meyers. Botto and Meyers made all deposits growing out of business dealings they had together in the bank account of the petitioner. All dealings Botto and Meyers had were on an equal basis.

The profits made by the petitioner in 1918 were $14,801.64; in 1919, $14,572.62; and in 1920, $19,343.90.

The contracts for films that were exhibited at the Gem Theatre were made in the name of Botto and Meyers.

In procuring a new lease on the Gem Theatre Co., as required by the contract of April 26, 1921, Messrs. Botto and Meyers arranged with Oscar L. Herbert, one of the heirs of the Louis Herbert Estate, and in charge of the leasing of the property, for a cancellation of the existing lease on the premises and for a new lease between the Louis Herbert Estate and Rodgers and McFarling. By an indenture dated May 31, 1921, the Gem Theatre property was leased by the Herbert Estate to Rodgers and McFarling, from June 1, 1921, to June 1, 1926, at a stipulated rental of $200 per month, with the privilege of a three-year extension at a fixed rental of $250 per month.

Meyers considered the lease, film contracts, and the good will of himself and Botto to be worth about $22,500. Immediately after going out of the motion picture business, Mr. Meyers could have secured a position at an annual salary of $10,000 as manager of a theatre.

The certified copy of the articles of dissolution of the petitioner reads in part as follows:

(3) The complete itemized list of all its corporate assets and property at the time of their distribution, were as follows:

Cash on hand and in bank_____ $12,566.95

All the corporate property and assets had been sold and turned into money, and was distributed among the stockholders as hereinafter set forth.

(4) The date and manner of distribution of corporate assets and property were as follows: On October 1st, 1921, 10/20 to Alphonse Meyers, 9/20 to Augustus Botto and 1/20 to Alexander Wilson.

It is hereby further certified that the debts of such corporation had been fully discharged and the assets distributed among the stockholders according to their respective rights.

The balance of cash on hand, $12,566.95, mentioned in the above quoted extract from the articles of dissolution, was the balance left after counting in the proceeds of the sale for $25,000 at the closing of the petitioner's bank accounts.

I. W. Rodgers (one of the purchasers in the contract of April 26, 1921) had been in the motion picture business since 1896 and has had considerable experience in buying, selling and leasing motion picture theatre property. The physical equipment in the Gem Theatre had a fair market value at the date of sale of $6,000 or $7,000. All of the items of consideration on the part of the vendors contained in the contract to sell dated April 26, 1921, were, taken as a whole, worth $25,000 to the vendees. The lease on the Gem Theatre property when acquired by Rodgers and McFarling, as above described, had no separate, bonus, or fair market value.

OPINION.

LANSDON: The issue raised by this proceeding is whether the total consideration of $25,000 paid by the vendees in 1921 as the result of the performance of a contract to sell dated April 26, 1921, represents gross income to the petitioner.

The profit resulting from the transaction was $22,392.19. The total consideration for the sale in question was $25,000. The petitioner claims that of said consideration, the amount of $16,660 represents the allocated sales price of property sold and belonging to its individual stockholders, Augustus Botto and Al Meyers. In other words, the petitioner claims that its gross income has been erroneously increased by the sum of $16,660.

The determination of this case requires a careful analysis of the contract to sell dated April 26, 1921, in the light of all the evidence. The contract was made "by and between Gem Theatre Company, Augustus Botto and Al Meyers, of Alexander County, Illinois, parties of the first part" and the named vendees as parties of the second part. The contract does not specify the ownership, as between the various parties of the first part, of the items involved and forming the subject matter of the transaction.

The proof adduced by the petitioner is incomplete in several particulars. No evidence was introduced regarding the covenants on the part of the individuals to sell and deliver to the vendees an assignable lease on the Kimmel Theatre and on the Cairo Opera House. We are not in a position to relegate these covenants to an insignificant role in the entire agreement. The contract to sell speaks for itself and contains a provision "that in the event parties of the first part fail or refuse to comply with all of the terms and conditions

of this contract on their part, then they shall at the option of the parties of the second part, refund to said parties within 10 days the $1,000.00 paid to them at the time of the execution of this contract." Mr. I. W. Rodgers, one of the vendees, testified that he could not intelligently segregate the separate values of the items forming the subject matter of the contract to sell.

The provisions of the contract respecting the delivery by the vendors of a lease on the Gem Theatre property, called for a minimum term of five years and a maximum rental of $200 per month to take effect June 1, 1921, or for a substitute lease upon said property to be approved by the vendees. It is shown that the Gem Theatre had been operated on the premises in question close to 11 years, and that the lessors were all of Cairo, Ill., and knew that the property was being used in the motion picture business. Under these circumstances, the contract provision for a maximum rental of $200 per month indicates with reasonable definiteness the vendors' conception of the fair rental value of the premises. On May 31, 1921, a new lease was executed between the owners and the vendees for a term of five years beginning June 1, 1921, at a rental of $200 per month, with the privilege of a three-year extension at a fixed rental of $250 per month. This indicates with reasonable definiteness the lessors' conception of the rental value of the premises. The provisions of the contract to sell were thus fulfilled in this regard. It is difficult to perceive a bonus value applicable to the Gem Theatre lease acquired by the vendees on which a portion of the purchase price of $25,000 could be allocated on any sound basis.

In view of the terms of the application for its charter, followed by occupation of the premises and carrying on of the business by the petitioner, we are of the opinion that the lease of the Gem Theatre property was either assigned or sublet to the petitioner, as between the petitioner and Augustus Botto and Al Meyers. *Lincoln Furniture Co.* v. *Bornstein* (1926) 135 Atl. 83; *Emery* v. *Hill* (1893) 67 N. H. 330; 39 Atl. 266. Cf. *In re Lindy-Friedman Clothing Co.* (1921) 275 Fed. 453. However, no evidence was introduced to show that the lessor had any knowledge of the breach of the covenant against assigning or underletting. The lessor was therefore always in a position to declare a forfeiture of the lease, and the acceptance of the petitioner's checks in payment of the rent, *without actual knowledge of the breach,* did not constitute a waiver of the covenant. *Emery* v. *Hill, supra; German-American Savings Bank* v. *Gollmer* (1909) 155 Cal. 683; 102 Pac. 932; *Boston, C. & M. R. R.* v. *Boston & L. R. R.* (1888) 65 N. H. 393; 23 Atl. 529. Cf. *Gulf, C. & S. F. Ry. Co.* v. *Settegast* (1891) 79 Tex. 256; 15 S. W. 228; *Jackson* v. *Knight* (1917) 194 S. W. 844. Under these circumstances, although

11340°—28——23

petitioner could have defended its possession of the premises as against a stranger, it could not recover damages thereunder for loss of future profits or for anything dependent upon the future for its value. *Bass* v. *West* (1900) 110 Ga. 698; 36 S. E. 244, 247. An assignment of a lease made in violation of a statutory provision or a covenant in the lease can be taken advantage of only by the landlord for whose benefit alone the provision is made, and he may waive such provision. Thompson on Real Property, vol. 2, pp. 473–474. The existing lease on the premises at the time the contract to sell was executed had been extended to September 1, 1922. If any portion of the consideration of $25,000 is attributable to the cancellation of the existing lease on Gem Theatre property, it would seem that such portion belonged to the petitioner and not to its stockholders.

A consideration of the entire contract leads to the conclusion that the principal factor inducing the sale and the consideration of $25,000 paid by the vendees was the demonstrated earning power of the Gem Theatre Co. from the operation of its three theatres, over and above a reasonable return on the investment in tangible property. Although the so-called good will of the petitioner, in the sense just explained, is not specifically mentioned as such in the contract as being a subject matter of sale, nevertheless, in effect, that is what the vendees acquired as the result of the transaction. Supplementing and bearing directly upon this phase of the transaction was the covenant by the " parties of the first part " not to engage in the motion picture business either directly or indirectly for a period of five years in the City of Cairo, Ill. Each of the parties of the first part was bound by this condition; that is, not only Augustus Botto and Al Meyers, but also the petitioner itself. It would seem even more essential to eliminate the petitioner with the name " Gem Theatre Company " from the competitive field in Cairo than to remove its stockholders and officers from such competition. The petitioner in its evidence and brief apparently proceeded on the assumption that Messrs. Botto and Meyers were the only parties concerned in the covenant against competition. That assumption does not seem reasonable under the circumstances.

The most reasonable view of the transaction in question would seem to be that substantially all of the $25,000 purchase price was paid for assets belonging to the business of the petitioner. No evidence has been introduced and no basis suggested by which the value of the elimination of the individuals, Augustus Botto and Al Meyers, from competition in the Cairo field could be even approximated.

*Judgment will be entered for the respondent.*

Considered by STERNHAGEN, GREEN, and ARUNDELL.