19606. DAVIS *v.* GARDEN HILLS CORPORATION.

DECIDED JUNE 27, 1929. REHEARING DENIED JULY 10, 1929.

*Charles W. Anderson,* for plaintiff.
*Alston, Alston, Foster & Moise,* for defendant.

LUKE, J. The ultimate question in this case is whether or not the court erred in dismissing the petition on demurrer. The petition in substance is as follows: J. H. Davis shows:

1. He is a resident of Fulton County, Ga., and is engaged in the dairy business.

2. Garden Hills Corporation, the defendant, is a corporation with an office and place of business in said county.

3. "In conducting such dairy business he has been for the past thirteen years occupying and using the property described hereafter," and within the past two years has erected on said property at his own expense "a barn and milk-room costing him $1200; keeps and pastures thereon twenty-four cows of the value of $3,000, and dairy equipment of the value of $1700; serves one hundred customers daily by the sale of forty-five gallons of milk per day, using this property for and in such business where he houses, milks, pastures, waters and cares for his milk cows."

4. On April 17, 1926, the defendant acquired, and it now owns, certain real estate lying north of said property so occupied by plaintiff. Defendant's said property drains naturally towards said property occupied by the plaintiff, and there is a natural stream flowing perpetually through the defendant's said property southwardly and on through said property occupied by the plaintiff.

5. "Petitioner rented the property which he occupies and uses for said purposes and for dwelling purposes, but mainly for such business reasons," and up to the first of the year said stream afforded an abundance of clear pure water for his cattle to drink, and was of considerable value to him.

6. Plaintiff sells his dairy products in the City of Atlanta, and had to comply with all the requirements of the city health department as to his dairy and dairy equipment.

7. The city health authorities inspected said stream and ordered the plaintiff "to cease using the water in said stream by reason of the discovery of the following facts and conditions:" (a) Defendant was emptying into said stream sewage from various houses on its said property. (b) Defendant provided a "general sewage disposal system or drain into said stream as a part and parcel of the very plan of developing said property for subdivision purposes." (c) A large number of houses have been built on the property purchased and developed by the defendant, consisting of dwelling, servant and other houses, from which a large flow of sewage empties into said stream. (d) Said sewage contaminates and pollutes the water in said stream, rendering it unfit for watering the plaintiff's dairy cattle. (e) On January 1, 1929, the plaintiff was first informed of said condition and ordered by the aforesaid authorities to abandon the use of the water in said stream "on pain of being barred from disposing of his products in the City of Atlanta, or, in violation of such order, that he would be criminally prosecuted."

8. Said plan of disposing of said sewage is part of the defendant's general plan of developing its said property for profit, and "it has knowingly, wilfully, and intentionally provided a means and system of conveying sewage therefrom which polluted said stream as aforesaid."

9. "Petitioner is entitled to the use of said stream free from such contamination, and his rights have been violated by the defendant corporation, and such violation of his rights continues from day to day."

10. On April 5, 1928, the plaintiff notified the defendant in writing of said condition, but the defendant continues to disregard the plaintiff's rights to use said stream free from pollution.

11. "As a result of such invasion of his rights by said de-

fendant corporation, your petitioner has been damaged in the sum of $10,000, in that: (*a*) Petitioner is forced to abandon the use of said property, and the loss of said privilege is reasonably worth $1500 to petitioner. (*b*) That up to the present he has had to expend the sum of $300 to install a pumping system and piping to procure water for his stock at night. (*c*) That he has been forced to expend $200 in fencing said stream of water. (*d*) That his yearly expenses for water since he has been deprived of the use thereof is $1200, which he must provide for his cattle at the expense of $100 per month for pumping and hauling the same. (*e*) That he is caused the additional expense of $600 per year in time and effort to prevent his cattle from reaching and using said stream of water for drinking purposes. (*f*) That the loss of the present value of his barn and milk house on said property by abandonment will be $1200. (*g*) That he is entitled to the sum of $5,000, besides the foregoing general damages, at the hands of defendant as punitive damages against defendant for wilful and malicious trespass since the date alleged, April 5, 1928."

12. "That the foregoing items are all damages flowing from the acts, doings, and things as the original intent, design, and purpose of said corporation, and which it has adopted as its own acts, purposes, designs, and accomplishments through its officers, agents and servants," and "it has profited thereby to the detriment, damage, and injury as aforesaid of your petitioner in and about the premises herein alleged."

13. By the invasion of the plaintiff's rights by the defendant, the plaintiff has been damaged in said sums aforesaid.

14. (The 50-5/8 acres of land "used and occupied by petitioner" is here described.)

15. (Here the said property of the defendant is described.)

16. (Here reference is made to a "plat or sketch" of the defendant's said property and of the said land used by the plaintiff, which purports to be attached as an exhibit; but the record discloses no such exhibit.)

17. "That by reason of the things, acts, and facts alleged and averred in this petition, petitioner has been damaged in the sums aforesaid at the hands of defendant."

The defendant demurred at length, generally and specially, to the petition. In so far as this case is concerned, the material

parts of the demurrer are sufficiently indicated by the following order of Judge E. D. Thomas: "Defendant's special demurrers having been heard and considered, it is ordered and adjudged that demurrer 7 to paragraph 5 of plaintiff's petition is sustained in so far as it fails to set up a copy of plaintiff's lease, the terms of said lease, the leasehold period, and the rental to be paid. Demurrer 8 to paragraph 7 of plaintiff's petition is sustained in so far as it fails to set up the ordinances of the City of Atlanta under which said alleged inspection took place, and how said city's authority was exercised, and the order given by said city authorities to said plaintiff. Demurrer 10 to subparagraph D of paragraph 7 of plaintiff's petition is sustained in so far as said petition fails to allege the distance of said disposal plant from plaintiff's property. Demurrer 13 to paragraph 9 of plaintiff's petition is sustained in so far as said petition fails to allege the plaintiff's right, title, and interest in and to said stream, and that said stream is pure and uncontaminated except for defendant's disposal plant. Defendant's demurrer to paragraph 14 [evidently paragraph 11 is intended] of plaintiff's petition is sustained as to sub-paragraph G of said paragraph, and is likewise sustained as to sub-paragraphs A to F inclusive, in so far as plaintiff seeks to recover for the character of damages set forth in said sub-paragraphs, and the amounts of such alleged damages as set forth in said sub-paragraphs, said sub-paragraphs A to F not alleging legal measure of damages. Said sub-paragraphs A to F, however, are retained in so far as they may tend to illustrate a diminution in the rental value of said property. Defendant's demurrer 16 to sub-paragraph B of paragraph 11 of plaintiff's petition is sustained in so far as said petition fails to allege the absence of any other branch or stream of water in said pasture. The remaining special demurrers are overruled. No order is made on defendant's general demurrers, and the court reserves the consideration thereof and ruling thereon pending the filing and allowance of amendments by the plaintiff, and the plaintiff is given thirty days from the date of this order in which to amend his petition. This 21st day of November, 1928."

On December 4, 1928, the plaintiff duly filed his exceptions pendente lite to the foregoing judgment so far as it was adverse to him. On December 19, 1928, he amended his petition substan-

tially as follows: By adding to paragraph 5 of the petition the following paragraph numbered 5-a: "That three years ago plaintiff and J. W. Davis and Mrs. J. S. Akers [the owners of the land occupied by plaintiff] orally entered into and have since on the part of all agreed and acted under a contract providing that, should plaintiff build and maintain at his expense a dairy barn and other necessary buildings and equipment which would be attached to the premises and that would meet the requirements of the authorities of the City of Atlanta with reference thereto for dairy purposes, he having occupied said premises ten years previously, and the buildings then being condemned by such authorities for such purposes, pay the rental of $30 per month, as at that time was being paid for such property, he should for such considerations be permitted to occupy said premises as a tenant as long as the premises should be held for rental by said owners and he desired to do so; that, in compliance therewith, plaintiff expended the sum of $1200 for such purposes at his expense, prior to the acts herein complained of and prior to the existence of defendant, and that he has kept his part of said agreement and occupied said land and said premises under such contract." 2. By attaching a copy of the milk ordinances of the City of Atlanta; by attaching a written order of the health department of the City of Atlanta, commanding the plaintiff to stop using branch water for cows to drink, and to fence branch off from pasture. This order stated that the water was bad, and that the order was to be complied with at once, and it was dated February 12, 1928. Plaintiff further amended paragraph 7 of the petition by alleging that he "has done the things, and continues so to do, which said health officer ordered him to do . . to avoid the penalty of said ordinance and to avoid the penalty of the State law." 3. By adding the following to paragraph 7 of the petition: "That said disposal plant is about one-fourth of a mile from plaintiff's premises." 4. By adding a sub-paragraph to paragraph 9 of the petition, averring that he had exclusive right to his tenancy and to the use of the water of said stream during his said tenancy by virtue of that tenancy, and that except for said contamination said stream is and has been pure and uncontaminated. 5. By adding to sub-paragraph B of paragraph 11 of the petition the following averment: "There is no other branch or stream of

water in said pasture from which he could procure adequate or sufficient water for his cattle." 6. By adding to paragraph 11 the following: "That said premises were, prior to the injury and nuisance complained of, reasonably worth the sum of $10,-000 per annum for use in connection with his said business, and that since the injury complained of the said premises have been thereby rendered valueless for such purpose to him, and that he has by said injury suffered the loss of his profits of said business." The following order was passed by Judge Thomas on December 19, 1928: "The foregoing amendment having been tendered to meet objections raised by special demurrers heretofore sustained within the time fixed by the order, . . it is ordered that the same be and is hereby allowed, subject to further objection and demurrer, and ordered filed."

Defendant renewed its original general demurrer; demurred specially to paragraph 5 of the petition as amended "in so far as it relates to the expenditure of $1200 prior to the acts complained of, as being irrelevant and immaterial and not constituting any legal measure of damages," and demurred specially to paragraph 11 of the original petition as "failing to set out any legal measure of damages," as being "vague and indefinite," as stating a mere conclusion of the pleader, and as failing to show "how said premises were reasonably worth $10,000 per annum for the acts complained of, and how and in what manner and in what particulars said premises have been rendered valueless."

Here the plaintiff offered the following amendment to paragraph 11 of the petition: "That his business ordinarily, without the trespass complained of, and in the absence of the additional expenses incident thereto and occasioned thereby as aforesaid, was profitable; that his gross income from his investment in his business herein set out ordinarily amounts to $8,100 per annum from the sale of milk alone, besides other products; that his gross income, with his ordinary expenses, amount to $10,000 per annum; that his ordinary net income less expenses amounts to one fifth of the gross income; that the incidental and additional expenses resulting from such trespass is equal to his net income, and prevents plaintiff from making a profit from his business." On January 30, 1929, Judge Pomeroy passed the following order: "Defendant's general demurrer to plaintiff's petition and his two

amendments thereto coming on for hearing, it is, after argument of counsel, ordered that said demurrer be sustained and said petition as amended is dismissed." We have set out the pleadings and the proceedings in the trial court somewhat fully, in order that the case might be understood without repetition. As we see it, the court did not err in sustaining the general demurrer and dismissing the petition. On demurrer the grounds of damage set out in sub-paragraphs A to F, inclusive, of paragraph 11 of the original petition were held to allege "no legal measure of damages," and these sub-paragraphs were retained only in so far as they tended "to illustrate a diminution in the rental value of said property." The ruling in this regard was acquiesced in by counsel for the plaintiff in error, as appears from the following statement in his brief: "In the case of Bass *v.* Wheat, supra [*Bass* v. *West*, 110 *Ga.* 698, 36 S. E. 244], it was held that it was not error to overrule the special demurrer to the allegations as to profits, etc. Under this case we could hardly insist on the exceptions pendente lite to the ruling as to sub-paragraphs a and f inclusive on the special demurrer, since they are left in the suit for the only purpose for which they were intended and could serve." By subsequent amendments, the plaintiff sought to recover for the loss of his profits from the said business, but failed to alleged a diminution in the value of his tenancy.

As we view the contract pleaded, the plaintiff was a tenant at will, and we are aware of the fact that "a tenancy at will is an interest in land, and is capable of being damaged." *Towaligu Falls Power Co.* v. *Sims*, 6 *Ga. App.* 749 (65 S. E. 844), citing *Hayes* v. *Atlanta*, 1 *Ga. App.* 26 (57 S. E. 1087). "The difference in the value of the tenancy before and after the trespass is the proper measure of damage, and this is the issue for the jury, and all evidence legally illustrating that issue is admissible." *Daniel* v. *Perkins Logging Co.*, 9 *Ga. App.* 842, 844 (72 S. E. 438). As we see it, the petition in this case failed to set out any proper measure of damages in so far as the value of the lease is concerned, and failed to allege any other damage for which a recovery could be had. Therefore the judge did not err in sustaining the demurrer and dismissing the petition.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*