### 14. HAYES *v.* CITY OF ATLANTA.

1. The question as to whether a leasehold estate for less than five years is property for which compensation must be paid when it is taken or damaged for public purposes is not properly before the court. The petition claimed such damages, and, there having been no attack upon

the sufficiency of the petition, upon plaintiff's exception to the grant of a nonsuit the defendant will not be allowed to raise the question, not made in the record, that damages for such taking are not recoverable.

2. The plaintiff, in order to support his action, relied upon a written lease, demising the premises to him for two years. The contract was under seal, signed by the plaintiff as lessee and by the owner of the premises, through her agent, as lessor, but it appeared that the agent's authority was in parol only. *Held:* (*a*) An agent without a written authority under seal can not bind his principal by a written contract under seal, nor can such a contract, so executed, be ratified by the principal by any act less solemn than a writing under seal. (*b*) Such a contract, so evidenced as against the lessor, was, as to her, as if made in parol, and became a tenancy at will, upon the lessee entering into possession under it. (*c*) A tenancy at will of one party to the contract is a tenancy at will of the other also, and therefore the result of such a contract was to create the ordinary relation of tenancy at will. (*d*) The estate of a tenant at will is a leasehold estate.

3. The writing referred to in the preceding headnote was of some value as evidence in the case, and the court erred in excluding it.

4. Ordinarily the recovery for the taking or damaging of a leasehold estate is measured in accordance with its market value, but, since the estate of a tenant at will is not assignable, it does not have a market value in the usual sense, and therefore the actual damages must be determined by the jury, in the light of the proved facts and circumstances.

5. Upon its expiration, an estate of indeterminate duration will be treated as if the term were fixed and certain originally.

6. The plaintiff, in order that the jury may properly estimate the value of his leasehold estate and determine the amount of damage that has been done to the same, may not only show by proof that he was able to conduct a profitable business in the rented premises, but may prove this fact with all the definiteness of which it is capable; and therefore the court erred in excluding his testimony as to the amount of his profits.

Action for damages, from city court of Atlanta—Judge Reid. January 18, 1906.

Argued January 8,—Decided January 17, 1907.

*Slaton & Phillips, Etheridge, Boykin & Etheridge,* for plaintiff. *James L. Mayson, William P. Hill,* for defendant.

POWELL, J.   It appears from the record that, in 1903, the City of Atlanta, in constructing what is known as the "Peters-street viaduct," obstructed and practically destroyed the ingress and egress to the premises in which the plaintiff was conducting a profitable business.   On February 11, 1904, the plaintiff brought suit against the city, alleging that he had a leasehold interest in the property, having rented the same from one Mrs. Alexander for a term of two years from April 1, 1902, to April 1, 1904, and that

this leasehold estate had been damaged by the erecting of the viaduct, to the extent that in June, 1903, he was forced to abandon his business, though he was required to pay the rent monthly up to the time of the beginning of the action.  He set up the specific injuries to his business in detail, but distinctly sued only for "damages to his leasehold estate."  He attached a copy of the purported lease from Mrs. Alexander to himself.  An inspection of this instrument shows that it is signed by the plaintiff, and by Mrs. Alexander through her agent M. L. Thrower, and that it is under seal. Upon the trial it appeared that Thrower had only parol authority from Mrs. Alexander to sign the lease, and that she was not present when it was executed.  The plaintiff sought to show that Thrower's signing of his principal's name to the sealed lease was in accordance with a general custom prevailing among renting agents in Atlanta, but the court did not permit the proof to be made.  It was shown that the plaintiff had entered into possession under the lease and had retained possession to the date of the bringing of the suit, and that he had regularly paid his rent to Thrower, who had transmitted it to Mrs. Alexander.  The court allowed the plaintiff to show that his business conducted in the rented premises had been profitable until the damage by the erection of the viaduct occurred, but refused to let him show the amount of the profits. Upon the tender of the lease in evidence, it was objected to by the defendant, on the ground that, the lease being under seal and Thrower's agency being created in parol only, its execution was not sufficiently authorized.  The court sustained the objection. Apart from the question of the lease, the plaintiff's proof as to the other allegations of the petition was sufficient to make a prima facie case.  The written lease from Mrs. Alexander to the plaintiff having been excluded, the court, upon motion of defendant, awarded a nonsuit.

1. Prefatory to the discussion of what we conceive to be the only points raised by the record and necessary to a complete determination of the case in this court, we will take up and dispose of the proposition, insisted upon by counsel for defendant in error, that a leasehold estate for less than five years is not such property as is contemplated in the clause of our constitution providing that compensation must be paid for property taken or damaged for public purposes.  He cites §3115 of the Civil Code to show that in such

cases no estate passes out of the landlord to the tenant. This question seems to have been decided adversely to this view in the case of *Pause* v. *Atlanta*, 98 *Ga.* 92, and in *Bass* v. *West*, 110 *Ga.* 698. Since this question would involve the construction of a clause of the constitution of this State, if a direct decision upon it were necessary to the determination of the case this court would refer it to the Supreme Court for instruction. However, we find no such necessity. The plaintiff in his petition expressly made the injury to this leasehold estate his cause of action, and the defendant, without demurring or otherwise objecting, joined issue, and procured a nonsuit. "The right to recover under the facts alleged is not involved in the decision of such a motion [for nonsuit]. If a plaintiff 'proves his case as laid,' he is entitled to prevail as against a nonsuit." *Kelly* v. *Strouse*, 116 *Ga.* 883.

2. Counsel for both parties agree, in their briefs and in the argument, that an agent without written authority under seal can not bind his principal by a written contract under seal, and that such a contract, so executed, can not be ratified by the principal by any act less solemn than a writing under seal. In the light of the uniform decisions of our Supreme Court to this effect, there is no question of law which seems to be more conclusively settled. It is also absolutely immaterial, in the application of the rule, that the contract was of such a nature as not to require a seal, to be valid. Civil Code, §3002; *Rowe* v. *Ware*, 30 *Ga.* 278; *VanDyke* v. *VanDyke*, 123 *Ga.* 690; *Overman* v. *Atkinson*, 102 *Ga.* 751; *Pollard* v. *Gibbs*, 55 *Ga.* 46. Therefore the lease in this case stands just as if Mrs. Alexander's name had never been attached to it. It was signed and sealed by Hayes, and under the decisions of our Supreme Court unquestionably constituted an offer on his part to make the contract, but was unilateral and was not mutually binding and enforceable until it was accepted by Mrs. Alexander *in the manner contemplated.* *Sivell* v. *Hogan*, 119 *Ga.* 167; *Huggins* v. *S. E. Lime & Cement Co.*, 121 *Ga.* 311; *McCaw Mfg. Co.* v. *Felder*, 115 *Ga.* 408; *Morrow* v. *Express Co.*, 101 *Ga.* 810; *Glessner* v. *Longley*, 125 *Ga.* 676; *Harrison* v. *Lumber Co.*, 119 *Ga.* 6; *Brown* v. *Bowman*, 119 *Ga.* 153. The acceptance contemplated was the granting on her part of a lease of the premises for a term of two years, which, under the statute of frauds (Civil Code, §2693 (5)), and under §3117, required a writing from her. A care-

ful reading of the cases cited above, as well as of the authorities upon which they are based, will make certain to the mind the proposition that no acceptance less than the one contemplated could make what the law construes to be a mere offer of a contract binding to the full extent of the terms proposed. It is equally well settled by the same cases that though the contract has never become completed by the acceptance contemplated, yet where the parties have had mutual dealings under such a contract, such mutual dealings create rights and liabilities which will be enforced pro tanto. The lease was a void lease, but the tenant's entry into possession under it and the landlord's reception of the rent created a status which has been determined from early times by common-law decisions, and in our jurisprudence by the ruling of our Supreme Court, as well as by a code section. Out of the common-law doctrine that the making of a deed of feoffment which was never rendered complete by livery of seisin entitled the grantee to enter, but that his status was that of a tenant at will (see Coke on Littleton, 56, b, sec. 70), was developed the doctrine that entry under a void lease created a similar relation. In the case of Denn v. Fernside (1747), 1 Wilson, C. Pl. Reports, 176, it is said: "Plessington, entering and enjoying the premises under a void lease, was not a disseisor, but a mere tenant at will, for it is found that he paid rent." Adopting this common-law rule, our Civil Code, §3117, says: "Contracts creating the relation of landlord and tenant for any time not exceeding one year may be by parol, and if made for a greater time, shall have the effect of a tenancy at will." Entry under an offer to lease creates the same relation. *Weed* v. *Morgan,* 88 *Ga.* 686.

Part performance under a lease not made in compliance with the law does not take the case out of the statute so as to make it enforceable according to its parol terms, but creates the relation of tenancy at will. *W. U. Tel. Co.* v. *Fain,* 52 *Ga.* 19; *Nicholes* v. *Swift,* 118 *Ga.* 924.

It was intimated in the argument that since Hayes, the tenant, had signed the lease, he would be held to its terms to the end of the time specified in the contract. Cognate to the proposition that a unilateral contract binds neither party, though one of them sign and seal it, as in the case of *Sivell* v. *Hogan,* 119 *Ga.* 167, is the recognized doctrine that a tenancy at the will of one party is like-

wise a tenancy at will of the other. *W. U. Tel. Co.* v. *Fain,* supra. A leasehold is defined by Black's Law Dictionary to be "an estate in realty held under a lease." By the same authority a lease is defined to be "a conveyance of lands or tenements to a person for life, for a term of years, *or at will,* in consideration of a return of rent or some other recompense." See also 2 Bl. Com. 317, for a similar definition. In *Lowery* v. *Powell,* 109 *Ga.* 194, Justice Little, quoting from Anderson, says, "An estate is defined . . to be the quantity of interest which a person has, from absolute ownership down to naked possession."

We therefore conclude that, as disclosed by the evidence, including the lease which we herein hold should have been admitted in evidence, Hayes was in possession of the premises lawfully as a tenant at will, and that his estate was properly described as a leasehold estate, and that, since his petition prays judgment for the damages to his "leasehold estate," his case was laid in accordance with his proof.

3. The writing between Hayes and Mrs. Alexander's agent, which for convenience we are calling the lease, was admissible in evidence, though its probative value may not have been as great as was claimed by the plaintiff. It was a part of the series of facts by which the plaintiff could prove his legal status in relation to the property. If Hayes had sued as owning the fee simple and had offered in evidence a deed conveying to himself only a life estate, such deed would have been admissible, though his recovery would have been limited accordingly. Just so in this case, while the plaintiff doubtless expected to show by the lease a tenancy for the two years, if the paper had been admitted in evidence, taken in connection with the other testimony, it would have proved only the lesser estate of a tenancy at will, but was not on that account to be excluded.

4. Ordinarily the recovery for the taking or damaging of a leasehold estate is measured in accordance with its market value. *Bass* v. *West,* 110 *Ga.* 698 (3) ; 15 Cyc. 694. It has been held, however, from ancient times that a tenancy at will is not transferable or assignable, and from its inherent qualities it seems obviously incapable of being the subject-matter of a sale, hence it has not, in the strict sense, a market value. Consequently the damages to it must be determined in the same manner as the damages

to other things which have no market value must be ascertained, that is to say, by an impartial jury, in the light of all the proved facts and circumstances. Civil Code, §3803; *Bryan* v. *Southwestern R. Co.*, 41 *Ga.* 71, 76; *Southwestern R. Co.* v. *Rowan*, 43 *Ga.* 414.

5. It frequently becomes necessary to ascertain the value of an estate of indeterminate duration, such as an estate for life, during widowhood, at will, or at sufferance. Prior to the termination of such estates this is necessarily attended with much difficulty. In estates for life resort is had to the mortuary tables, and the ordinary laws of expectancy are applied, due regard being had to the age and the condition of health of the person in question. In estates for widowhood a more difficult proposition is presented. This estate may be ended by either death or matrimony. While the youngest and most vivacious widow is not exempt from the fatality of the former, the oldest and ugliest is not entirely immune from the charms of the latter. Indeed it is hard to say in which case the estate is in more danger, when the widow is young, healthy, and vivacious, or when she is old, broken, and afflicted with ill health. However, we are not to be quoted as saying that we have found any case reported in which the damages as actually found by the jury were relatively small where the plaintiff was young and pretty. In the case of a tenancy at will still existing at the time of the trial, the court would probably hold that it could not be made to appear with reasonable certainty that it would continue for more than sixty days longer, since the landlord would have the right to terminate it within that period. A tenant at sufferance recovers only for his naked possession. *Bass* y. *West*, 110 *Ga.* 706.

However, where the estate has ended, the uncertainty of its duration no longer exists, and in this case the term is now as' certain as if the lease had been valid for a definite period, because it appears in the evidence that the tenancy was actually terminated in the month during which the suit was brought. If the question were upon the value of a life-estate and the life-tenant had died prior to the bringing of the suit, resort to the law of expectancy would not be necessary in order to determine the matter, as would be true in such a case where the life-tenant is living. While there are a few American authorities holding that even after death has made the term of the life-tenant certain, in an apportionment of

income or damage, the law of expectancy is still to be followed, we prefer to adopt the rule announced by Sir John Romilly, Master of the Rolls, in the case of Wilkinson v. Duncan, 23 Beav. 469, in which this question arose. We quote from the opinion: "The next question is, to what extent and upon what principle this is to be ascertained [referring to an apportionment of an income between the representative of a life-tenant, who died pending the suit, and a reversioner]. If the actual risk has been ascertained in awaiting the result, I think that the fair mode of dealing with the case is not to divide the fund by ascertaining the sum at which the reversion would have sold at the death of the testator according to the probabilities of the case, but by ascertaining the value of the reversion on the assumption that it was to fall in on the day it actually did fall in." While this decision, being rendered in 1857, is not binding on us as a common-law authority, we think the reasoning is sound, and agree that there is no need to regard that as uncertain which in point of fact is certain. This rule is equally applicable in the case of a terminated tenancy at will.

6. The court allowed the plaintiff to show that his business conducted in the rented premises was profitable, as illustrative of the value of the lease, but refused to let him show definitely how profitable it was. This ruling seems to be in conflict with the decisions of the Supreme Court in the cases of *Sturges* v. *Frost,* 56 *Ga.* 188; *Juchter* v. *Boehm,* 67 *Ga.* 534; *Pause* v. *Atlanta,* 98 *Ga.* 92; *B. & W. R. Co.* v. *Hardey,* 112 *Ga.* 609, and *Bass* v. *West,* 110 *Ga.* 704. Just as, in determining the value of a human life unlawfully taken, proof may be made not only that the deceased had an earning capacity, but also what that earning capacity was, so, in determining the value of property taken, it may be shown not only that the property had an earning capacity, but also what that earning capacity was.

Having determined that our learned brother of the trial bench erred in excluding the lease, in not allowing the plaintiff to show the amount of his profits, and in granting a nonsuit, the judgment is                                                            *Reversed.*