## 77235. DeKALB COUNTY v. GLAZE et al.
### (375 SE2d 66)

BANKE, Presiding Judge.

·This is an inverse condemnation case arising from the redesign of an intersection by DeKalb County. At one corner of the intersection was a grocery store, or "superette," operated by appellee James Glaze, Jr., upon land owned by appellees Ralph Glaze and James Glaze, Sr. Previously, there had been unlimited access from the public right-of-way to the front of the store, where parking space had existed for approximately five automobiles. However, in connection with the redesign of the intersection, concrete curbs were installed at the edge of the public right-of-way leaving only two points of ingress and egress to the front of the store, 28 feet and 24 feet wide respectively. There was testimony that the placement of these curbs made it very difficult if not impossible for more than one car to park in front of the store at a time and also made it impossible for large delivery trucks to access the front of the store without driving over the curbs.

A jury awarded Ralph Glaze and James Glaze, Sr., $50,000 as damages for the diminution in the value of the property caused by the improvements and awarded James, Jr., $65,000 as compensation for his business losses. The county appeals, enumerating ten separate rulings of the trial court as error. However, many of these enumerations of error are overlapping, and the issues raised by them boil down to (1) whether the installation of the curbs constituted merely an exercise of police power rather than a taking and (2) whether, for various asserted reasons, there was a failure of proof on the issue of

2

business losses. *Held*:

1. "The distinction between use of eminent domain and use of the police power is that the former involves the taking of property [rights] because [they are] needed for public use while the latter involves the regulation of the property to prevent its use in a manner detrimental to the public interest." *Pope v. City of Atlanta*, 242 Ga. 331, 334 (249 SE2d 16) (1978). The county contends that no taking occurred in this case because the curbs were placed entirely within the existing right-of-way to promote the safety and convenience of the traveling public by improving traffic flow and preventing accidents at the intersection. However, there has been no showing, nor any suggestion, that the county was seeking to enforce a general prohibition affecting all similarly situated property owners. Moreover, it is well settled that if the installation of such improvements results in a substantial impairment of the property owner's "easement of access," a taking has occurred for which compensation is required regardless of the importance of the public interests which are thereby promoted. See, e.g., *Dougherty County v. Hornsby*, 213 Ga. 114 (97 SE2d 300) (1957).

The " 'easement of access is a property right, of which the landowner cannot be deprived upon the ground that the safety of the public traveling upon the highway may be endangered by the exercise of this easement by the abutting landowner, without just and adequate compensation being first paid to the owner.' " *Dougherty County v. Hornsby*, supra at 116, quoting *State Hwy. Bd. v. Baxter*, 167 Ga. 124 (2) (144 SE 796) (1928). While the landowner is not entitled to access at all points on the boundary between his property and the public right-of-way, he is entitled to "convenient access," and the existing means of ingress and egress may not be "substantially interfered with" without compensation. *State Hwy. Bd. v. Baxter*, supra at 133. "The measure of damages is any diminution in the market value of the property by reason of such interference." *Metro. Atlanta &c. Transit Auth. v. Datry*, 235 Ga. 568, 577 (220 SE2d 905) (1975).

It is undisputed that there had been unlimited access to and from the store for many years before the curbs were installed. Whether the openings left in the curbs by the county provided reasonable access to the property under the circumstances and whether the existing access was "substantially interfered with" were questions of fact to be resolved by the jury. Accord *Dougherty County v. Hornsby*, supra; *Clayton County v. Billups &c. Co.*, 104 Ga. App. 778 (123 SE2d 187) (1961). Compare *Metro. Atlanta &c. Auth. v. Fountain*, 256 Ga. 732 (352 SE2d 781) (1987) (where there was no interference with access but merely with traffic flow on the roadway); *Johnson v. Burke County*, 101 Ga. App. 747 (115 SE2d 484) (1960) (where the installation of the curbing did not affect the existing access to the

property but merely prevented use of the state's right-of-way for the unauthorized purpose of parking and servicing vehicles). It follows that the trial court did not err in denying the county's motion for directed verdict on the issue of whether a taking had occurred, nor in refusing to strike the appellees' evidence concerning the resulting diminution in the value of the property.

2. The county contends that the evidence did not support the award of damages to James Glaze, Jr., for his business losses because (a) he did not have a lease; (b) it was not shown that the property was uniquely suited to the use in question; (c) there was no proof that the store had been profitable before the curbs were installed; (d) there was no showing that the damage to the business was permanent in the sense that the business could not have been duplicated at another location; and (e) the testimony purporting to establish the amount of the losses was speculative. We shall address these contentions seriatim.

(a) The county cites *Alexander v. Rozetta*, 110 Ga. App. 660, 661 (139 SE2d 451) (1964), and *Hayes v. City of Atlanta*, 1 Ga. App. 25 (57 SE 1087) (1907), for the proposition that a tenant at will cannot recover his business losses resulting from a taking of the owner's property rights. In *Alexander v. Rozetta*, this court held that "the tenant at will of the property condemned is entitled to receive from the gross amount of the . . . award the actual value of the tenancy at will and no more." However, that case did not involve a claim for business losses but merely the extent to which the tenant at will was entitled to share with the owner in the compensation awarded for the value of the property taken. There was thus no implication in the above-quoted language that a tenant at will would not be entitled to recover his business losses as a separate element of damages in a condemnation proceeding. In *Hayes v. City of Atlanta*, such a claim was in fact allowed. There, as in the case before us, a tenant at will was seeking to recover for the damage to his business allegedly caused by the obstruction of ingress and egress to the premises. The court held that such damages "must be ascertained . . . by an impartial jury, in the light of all the proved facts and circumstances," Id. at 31, including proof "not only that the property had an earning capacity, but also what that capacity was." Id. at 32.

In the case before us, it was shown that the store was a family business which had been in existence for many years and that after the curbs were installed James, Jr., had been allowed to remain on the premises without paying rent. While the fact that he was a tenant at will certainly was a factor to be considered by the jury in assessing the extent to which his business losses were recoverable, we hold, on the basis of *Hayes v. City of Atlanta*, supra, that the nature of his tenancy operated neither to bar him from recovering such losses alto-

gether nor to restrict such losses to a 60-day period — i.e., the length of time he was entitled to remain on the premises as a matter of right pursuant to OCGA § 44-7-7. Accord *Almota Farmers Elevator &c. Co. v. United States*, 409 U. S. 470, 474 (93 SC 791, 35 LE2d 1) (1973) (holding that "the possibility that the lease might be renewed as well as the possibility that it might not" were factors to be taken into consideration in assessing the value of a leasehold interest in a condemnation proceeding).

(b) Whether property is unique is a jury question, and only slight evidence of uniqueness is required to warrant the submission of the issue to the jury. *Dept. of Transp. v. 2.734 Acres of Land*, 168 Ga. App. 541, 542 (1) (309 SE2d 816) (1983); *Dept. of Transp. v. 19.646 Acres of Land*, 178 Ga. App. 287 (1) (342 SE2d 760) (1986); *Simiway, Inc. v. Dept. of Transp.*, 178 Ga. App. 414 (5), 417 (343 SE2d 497) (1986); *Dept. of Transp. v. Coley*, 184 Ga. App. 206, 209 (4) (360 SE2d 924) (1987). Cf. *Dept. of Transp. v. Fitzpatrick*, 184 Ga. App. 249 (4) (361 SE2d 241) (1987).

The appellees presented expert testimony in this case to the effect that the property had been ideally suited for use as a convenience store prior to the installation of the curbs due to such factors as topography, frontage, traffic flow, and accessibility but that it had been rendered unsuitable for such use by the improvements in question. This testimony constituted at least "slight evidence" of uniqueness and was thus sufficient to authorize the submission of the issue to the jury.

(c) The county's contention that the business was not shown to have been profitable prior to the taking is belied by examination of James, Jr.'s income tax returns for the years surrounding the taking, which were introduced as evidence. Cf. *Brock v. Dept. of Transp.*, 151 Ga. App. 905 (2) (262 SE2d 156) (1979).

(d) The county's contention that there was no proof that the injury to the business was permanent (in the sense that the business could not be duplicated elsewhere) is, in essence, merely a restatement of its contention that there was no proof of uniqueness. The cases relied upon by the county do not stand for the proposition that the mere possibility of duplicating a business elsewhere precludes any recovery for business losses. The holding in *Housing Auth. of Atlanta v. Southern R. Co.*, 245 Ga. 229 (264 SE2d 174) (1980), was that the condemnee could not recover *both* its lost profits *and* its relocation costs. No relocation costs were awarded in the present case. In *Dept. of Transp. v. Dent*, 142 Ga. App. 94, 95 (235 SE2d 610) (1977), we held that business losses caused by a partial taking were not a separate element of compensation "in the absence of a showing of a special or unique value to the owner. . . ." Such a showing was, of course, made in the present case.

(e) Finally, we reject the county's contention that the evidence concerning the amount of the business losses was speculative because it "allowed a range of values for business losses between $115,000 and $85,000 — a difference of $30,000." The fact that the jury was presented with a range of values from which to arrive at an estimate of the compensable business losses did not render this evidence unduly speculative. Accord *Housing Auth. of Atlanta v. Southern R. Co.*, supra, 245 Ga. at 231.

3. Having determined that the evidence presented at trial was not deficient for any of the reasons assigned, we hold that the trial court did not err in denying the county's motion for new trial or, in the alternative, for judgment notwithstanding the verdict.

*Judgment affirmed. Birdsong, C. J., and Beasley, J., concur.*

DECIDED OCTOBER 4, 1988 —
REHEARING DENIED OCTOBER 24, 1988 — ▮

*Albert S. Johnson, Lisa A. Foster*, for appellant.
*Furman Smith, Jr.*, for appellees.