A98A2181. BIK ASSOCIATES et al. v. TROUP COUNTY.
(513 SE2d 283)

JOHNSON, Chief Judge.

Troup County commenced a condemnation action against land owned by BIK Associates, a partnership. The declaration of taking was filed against BIK and other condemnees who had an interest in the subject property. The county contended the taking was necessary for a road construction project which would reroute a portion of U. S. Highway 29 ("Highway 29"). Troup County acquired two easements and 726.98 square feet of BIK's property, for which the jury awarded $30,000 in compensation. Being dissatisfied with the amount of its recovery, BIK appeals. We find no error and affirm.

BIK's property consisted of two parcels of land which abutted and were directly accessible to Highway 29. A commercial building is located on each parcel. From one parcel, Troup County took 726.98 square feet of land located in a drainage basin. It acquired a permanent slope easement and temporary construction easement on the other parcel.

As a result of the road project, Highway 29 was rerouted, and the

public road abutting BIK's remaining property was modified and renamed "New Airport Road." After the project is completed, the elevation of New Airport Road will be five to six feet higher at its centerline, and the centerline will be moved approximately twenty-five feet further away from BIK's buildings. BIK will retain direct access to New Airport Road. Although BIK's new driveways will be substantially in the same location and of the same width as its current driveways, the new driveways will be longer and have an approximate 11 percent increase in elevation. BIK's property will have access to Highway 29 by use of an access ramp. The ramp's entrance will be approximately 200 feet from the property.

1. Troup County filed a motion in limine to prevent BIK from introducing any evidence of consequential damages resulting from a change in traffic conditions and from introducing such evidence to determine value before and after the taking. The trial court entered an order directing BIK not to present any evidence of consequential damages based on alleged changes of traffic pattern, traffic volume, or circuity of travel resulting from the relocation of U. S. Highway 29, a ruling BIK argues was error. We disagree.

"[O]ne whose right of access from his property to an abutting highway is cut off or substantially interfered with has a special property right which entitles him to damages. But if his access is not so terminated or obstructed, if he has the same access to the highway as he did before the closing, his damage is not special, but is of the same kind, although it may be greater in degree, as that of the general public, and he has lost no property right for which he is entitled to compensation." (Citation and punctuation omitted.) *MARTA v. Fountain*, 256 Ga. 732, 733 (352 SE2d 781) (1987). This principle applies to both condemnation and inverse condemnation cases. Compare id. and *Dept. of Transp. v. Durpo*, 220 Ga. App. 458, 460 (1) (469 SE2d 404) (1996), with *Dept. of Transp. v. Taylor*, 264 Ga. 18, 20 (3) (c) (440 SE2d 652) (1994), and *Dept. of Transp. v. Katz*, 169 Ga. App. 310, 311 (2) (312 SE2d 635) (1983). Although the length and grade of driveways to the property have been changed, BIK has substantially the same direct access to New Airport Road as it previously had to Highway 29. BIK's access to New Airport Road, which still abuts BIK's land parcels, has neither been obstructed nor terminated.

Inconveniences shared by the public in general, such as changes in traffic pattern, circuity of travel, and similar traffic conditions, are not compensable; thus, a " 'greater difficulty in ingress and egress which is occasioned by a change in traffic patterns is not an appropriate item of damages in proceedings such as this.' [Cit.]" *Dept. of Transp. v. Taylor*, supra at 20 (3) (b). The trial court did not err in excluding evidence of changes in traffic conditions.

2. One of BIK's witnesses testified: "The total driveway will be

longer than it is now. The centerline of the new road . . . is maybe 100 feet beyond where the centerline is now. In addition, as I remember from looking at the plans, *despite what the site superintendent said earlier. . . .*" (Emphasis supplied.) The trial court interrupted the testimony at that point, and ruled, sua sponte, that the witness could not pass judgment on another witness's testimony. The trial court directed BIK's counsel to just ask questions and let the witness answer. BIK asserts the trial court erred because its ruling prevented BIK from introducing evidence to contradict the testimony of an opposing witness. Judging from the record before us, this is not what happened. The trial court merely prevented BIK's witness from expressing an opinion about the credibility of another witness's testimony. Witness credibility is a matter for jury determination. OCGA § 24-9-80. It is not the function of witnesses to determine the veracity of other witnesses. *Golden v. State*, 233 Ga. App. 703 (505 SE2d 242) (1998).

3. BIK asserts that the trial court erroneously denied it the opportunity to introduce evidence of diminished value to its property caused by drainage and water run-off. The record and transcript do not support this contention.

Following the deposition of BIK's engineer, Troup County filed a third motion in limine to exclude the engineer's testimony about drainage problems existing prior to the construction project and to exclude testimony about potential drainage and water problems arising from the entire road extension project. Thus, Troup County sought to preclude BIK from introducing evidence of pre-existing drainage problems and evidence of drainage problems caused by conditions existing in other parts of the project, which did not arise from the taking of the 726.98 square feet of BIK's property and the acquiring of the easements.

In a pre-trial deposition, the engineer testified that in the event of a "100-year rain," structural flooding could occur to a home downstream as well as to one of BIK's buildings if the drainage channel was not properly designed or it was not properly maintained. He further testified that if the new drainage channel was properly maintained, BIK's property should be protected from flooding; however, even if the drainage channel was properly maintained, BIK's parking lot could still flood from water coming from town, rather than from the drainage channel. He also testified that if the sewer lines were properly installed, BIK's property would not flood.

(a) *Drainage and water problems allegedly due to negligent construction or maintenance.* The trial court ruled that BIK's engineer could not testify as to any consequential damages which would result from drainage or water problems arising from and negligent construction of the road project. The trial court did not err in this ruling.

Consequential damages are damages which naturally and proximately arise to the remainder of the owner's property from the *taking* of the condemned portion and the use of the property for the purposes for which it is taken. *Butler v. Gwinnett County*, 223 Ga. App. 703, 704 (1) (479 SE2d 11) (1996). While a condemnation proceeding is conclusive as to all damages whether foreseen or unforeseen resulting from proper construction on condemned property, damages caused by negligent or improper construction on condemned property are recoverable in a separate suit from the condemnation proceeding. Id.

The collection and discharge of surface water caused by negligent or improper construction or maintenance are not proper matters for consideration in a condemnation proceeding. See *Panos v. Dept. of Transp.*, 162 Ga. App. 53-54 (2) (290 SE2d 295) (1982). Such damages do not naturally and proximately arise from the taking and thus do not qualify as consequential damages.

(b) *Drainage and water problems not arising from the taking.* We find the trial court did not prevent BIK from introducing admissible evidence of drainage or water damage caused by the taking. The record shows that the trial court initially asked the parties if they understood that water and drainage issues would be the subject of a new suit. The trial court further stated that the issue of water and drainage did not appear to be relevant in determining fair and just compensation. The apparent purpose of this inquiry was to notify the parties of the court's intent to preclude the introduction of irrelevant or immaterial evidence. BIK's counsel replied that its expert witness would testify as to damages resulting from the taking and would also testify that the remaining property would be damaged by the taking.

Upon examining the argument of BIK's counsel and the responses of the trial court, it appears that the trial court's subsequent ruling was neither intended to nor did it prohibit BIK's expert from testifying as to any water or drainage damages which would naturally and proximately arise from the taking. The trial court appears to have correctly concluded that BIK could not introduce evidence of drainage problems existing *prior* to the taking, drainage problems to property not belonging to BIK, or evidence of drainage problems which might exist in the future if the County was negligent in its construction. The trial court did not err in excluding this evidence as it would be neither relevant nor material to establish consequential damages in this case. As also recognized by the trial court, any drainage problems which might hereafter arise to BIK's property if the County should negligently construct the roadway project would be admissible only in a separate suit for damages resulting from that negligent construction. OCGA § 24-2-1; see also *Panos*, supra at 53 (2).

After the trial court's ruling, BIK did not establish the existence of any specific drainage or water damage which would naturally and proximately arise from the taking. We must conclude that BIK either did not have such evidence or misconstrued the scope of the trial court's ruling. If any doubt exists as to the ruling of a trial court, it is the party's responsibility to seek timely clarification of its scope and intended purpose.

4. BIK contends that the trial court erred by not allowing it to introduce evidence of diminished value to the remainder resulting from reduced visibility of the property caused by the taking. We find this contention to be without merit.

The trial court allowed William Johnson, a partner of BIK Associates, to testify that as a result of the construction, BIK's property now sits in a hole because the elevation of New Airport Road has been raised and the centerline of the road has been moved away from BIK's building, and that the value of the property was also diminished by the increased length and elevation of the driveways to BIK's property. The court would not allow Johnson to testify as to the visibility of the property from rerouted Highway 29.

An objection was sustained when Gordon Smith, Jr., a licensed architect, attempted to testify how "a section elevation view of the proposed new Vernon Road" (the rerouted Highway 29) would affect the visibility of BIK's property. In determining the elevation depicted in his elevation drawing, Smith used "the center line of the height of the new Vernon Road as it relates to the buildings" on BIK's property. BIK's property does not abut the new Vernon Road.

The trial court did not abuse its discretion when it did not admit evidence of a decrease in visibility of the BIK property from road locations which did not abut that property. New Airport Road is old Highway 29; particularly it is the same road that abutted BIK's property both before and after the rerouting of Highway 29. BIK's reliance on *Perry v. Dept. of Transp.*, 193 Ga. App. 254 (387 SE2d 445) (1989), is misplaced. This Court did not rule in *Perry* that evidence of reduced visibility of the remainder could be admitted to show diminished value where the reference point of visibility did not abut the remaining property. Questions neither brought to the attention of the Court nor ruled upon will not be considered as precedent. See *Gordy Tire Co. v. Dayton Rubber Co.*, 216 Ga. 83, 89 (1) (114 SE2d 529) (1960); *Jackson v. City of College Park*, 230 Ga. App. 487, 490 (1) (496 SE2d 777) (1998). To be admissible as evidence of consequential damages, reduced visibility must have resulted in damage which naturally and proximately arose to the remainder from the taking and the devoting of the taking to the purposes for which it was condemned. *Butler*, supra at 704 (1). BIK has failed to show how the excluded evidence met the consequential damages test; both error and harm must

be shown before a case will be reversed.

*Judgment affirmed. Smith and Barnes, JJ., concur.*

DECIDED MARCH 2, 1999.

*Daniel W. Lee*, for appellant.

*Lewis, Taylor, Todd & Dixon, Jeffrey M. Todd*, for appellee.