**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 8, 2024**

# In the Court of Appeals of Georgia

A24A0888. YKH REALTY, LLC et al. v. GEORGIA DEPARTMENT OF TRANSPORTATION.

HODGES, Judge.

The dispute underlying this appeal stems from the Georgia Department of Transportation's ("GDOT") condemnation of portions of two pieces of property in Catoosa County known as Parcel 5 and Parcel 6. YKH Realty owns the parcels, in which Philip and Amanda Spencer hold a security interest. In this appeal, YKH and the Spencers (collectively "the Condemnees") argue that the trial court erred in dismissing as untimely YKH's notices of appeal, which contested the amount of money GDOT had deposited for its valuation of the property. The Condemnees also argue that the trial court erred in granting GDOT's motion for partial summary judgment because material questions of fact remain regarding consequential damages

to the remainder of their property from the ways in which GDOT's construction impeded ingress and egress to the property. Specifically, the Condemnees aver that their dispute does not relate to the size or quality of the property "actually taken by GDOT[,]" but rather relates "to the effect of GDOT's taking and damage to the entire remainder of Appellants' property." For the reasons that follow, we reverse the dismissal of YKH's notices of appeal and we affirm in part and reverse in part the trial court's grant of partial summary judgment to GDOT.

We review de novo the grant of summary judgment, construing the evidence in the light most favorable to the Condemnees as the nonmoving parties. *9766, LLC v. Dwarf House*, 331 Ga. App. 287, 288 (771 SE2d 1) (2015). We also review de novo a trial court's grant of a motion to dismiss a notice of appeal. *Cedartown North Partnership v. Georgia Dept. of Transp.*, 296 Ga. App. 54 (673 SE2d 562) (2009).

In January 2019, before the current dispute arose, YKH voluntarily executed right-of-way deeds for Parcels 5 and 6 in GDOT's favor. The Spencers, as holders of a security interest in the condemned property, sued GDOT and YKH, alleging that they were not notified of the transaction, raising claims of inverse condemnation, and seeking, inter alia, to set aside the deeds. The matter was resolved in a Consent Final

Judgment in August 2019. In that Consent Final Judgment, inter alia, the Spencers relinquished their inverse condemnation claims and the parties agreed that the deeds would not be set aside. They also agreed that the judgment would not bar YKH from contesting any later condemnation action GDOT might file and would leave intact YKH's and the Spencers' rights to contest whether the compensation they received was just or adequate.

In October 2019, as part of a road construction project along U. S. 41 in Catoosa County, GDOT issued declarations of taking for Parcels 5 and 6,[1] which are adjacent to U. S. 41, accompanied by deposits of estimated "just compensation" for the takings. GDOT deposited $143,200 for Parcel 5 and $37,000 for Parcel 6 into the court registry. Specifically, GDOT took a portion of each parcel in fee simple, as well as certain easement rights.

Parcel 5 had a warehouse, vacant residential house, and road on it, and Parcel 6 had a mobile home or RV park on it. Parcel 5 is zoned R-1 as a single-family residential district for detached homes, including manufactured (or mobile) homes;

---

[1] The declarations were filed under separate case numbers for each parcel, but the trial court later consolidated the cases, with a retroactive consolidation date of October 2019. The consent order consolidating the cases also provided that Parcels 5 and 6 were to be treated as "one single parcel of realty[.]"

Parcel 6 is zoned C-1 as a general business district. The condemnation meant that the vacant house on Parcel 5 and one mobile home site on Parcel 6 were lost.

The Spencers timely moved to set aside the takings pursuant to OCGA § 32-3-11 (b) (2), (3), and (4) (1973),[2] arguing improper use of the powers of condemnation because Parcels 5 and 6 had not been assessed as contiguous properties. They specifically sought, as an alternative to setting aside the declarations of taking, to consolidate the two petitions under OCGA § 9-11-42 (a). As noted in footnote 1, infra, the parties then entered into a consent order consolidating the cases and the trial court denied motions to set aside. The Spencers also challenged GDOT's valuation, timely appealing the deposit GDOT filed with its declaration of taking pursuant to OCGA § 32-3-14.

---

[2] OCGA § 32-3-11 (b) provides, in pertinent part: "The power of the court as described in subsection (a) of this Code section shall be restricted to the following questions: . . . (2) The improper use of the powers of this article, such as are not contemplated by this article; (3) The abuse or misuse of the powers of this article; and (4) Such other questions as may properly be raised, including the question of whether or not this article has been invoked in some respect beyond the privileges conferred by this article or by an unauthorized agency, county, or municipality." We note that OCGA § 32-3-11 was most recently amended in April 2024; however, the language at issue here is identical to that in the version applicable to this appeal.

YKH never moved to set aside the taking and filed only untimely notices of appeal contesting the valuation in each pre-consolidation case. GDOT moved to dismiss YKH's untimely notices of appeal, and the trial court granted that motion.

GDOT also moved for partial summary judgment, alleging that the Condemnees' claims of consequential damages failed because no material factual dispute existed regarding whether GDOT had or would damage the Condemnees' remainder property. The trial court granted the motion for partial summary judgment.

The Condemnees now appeal both the dismissal of YKH's untimely notices of appeal and the grant of GDOT's motion for partial summary judgment.

1. As an initial matter, we note that neither side's briefs follow our Court rules for record citations. This is particularly troubling in a case such as this, which involves 12 volumes and nearly 2,800 pages. Our rules specify how electronic records are to be cited: "Reference to an electronic record should be indicated by the volume number of the electronic record and the PDF page number within that volume (Vol. Number – PDF Page Number; for example, V2-46)." Court of Appeals Rule 25 (d) (2). Further, some of the citations in the briefs do not correspond to the facts asserted. Others direct us to plats and sketches of the property involved that are partially

illegible or otherwise indecipherable, or to photographs of such poor quality that it is impossible to discern the details of what they depict.

> These deficiencies have hindered our appellate review. By failing to provide proper record citations, the parties to this appeal run the risk that we will miss evidence relevant to their arguments. While it is possible that such evidence exists somewhere in the appellate record, we have repeatedly held that it is not the function of this court to cull the record on behalf of a party.

(Citation and punctuation omitted). *Mommies Properties v. Semanson*, 366 Ga. App. 153, 154 (1) (880 SE2d 376) (2022). "So if we have failed to locate any specific evidence . . . , the responsibility rests with counsel." *Velazquez v. Perez*, 367 Ga. App. 555, 560-561 (4) (b) (887 SE2d 398) (2023).

2. The Condemnees first argue that the trial court erred in dismissing as untimely YKH's notices of appeal challenging the amount of GDOT's deposit for the taking. We agree.

OCGA § 32-3-11 (c) (1973)[3] provides that if a condemnee wishes to challenge a taking, it must do so "by proper pleadings, in the form of a petition . . . *not later than*

---

[3] Again, OCGA § 32-3-11 was most recently amended in April 2024. The language at issue here is substantively identical to that in the version applicable to this appeal.

*30 days subsequent to the date of service upon the condemnee* of the declaration of taking.''

(Emphasis supplied.) OCGA § 32-3-14 (1973)[4] similarly provided:

> If the owner, or any of the owners, or any person having a claim against or interest in the property is dissatisfied with the amount of compensation as estimated in the declaration of taking and deposited in court . . . such person or persons, or any of them, shall have the right, at any time subsequent to the filing of the declaration and the deposit of the fund into court, but *not later than 30 days following the date of the service .  . .* to file with the court a notice of appeal[.] (Emphasis supplied.)

Here, YKH acknowledged service on October 21, 2019. It filed notices of appeal 32 days later, on November 22, 2019. YKH admitted in judicio that the notices of appeal were not timely filed, but raised a variety of contentions below, which the Condemnees reiterate on appeal, as to why its notices of appeal are nonetheless preserved and should not have been dismissed.

(a) YKH argues that its untimely notices of appeal should not have been dismissed because the Spencers timely filed a value appeal pursuant to OCGA § 32-3-

---

[4] OCGA § 32-3-14 was last amended in April 2024. The version applicable to this appeal is virtually identical to the current version. The current version changes only the words ''notice of appeal'' in the statute's title to the present ''petition for review.''

14. YKH contends that it may "piggyback" on the Spencers' timely appeal, which preserved appeal rights for all appellants, not just the Spencers. We agree.

YKH essentially argues that because OCGA § 32-3-14 provides that "[i]f the owner or *any of the owners*, or *any person having a claim* against or interest in the property is dissatisfied with the amount of compensation as estimated in the declaration of taking and desposited in court, . . . such person or persons, *or any of them*, shall have the right . . . to file with the court a notice of appeal," this means that a timely appeal by any of those persons equates to a timely appeal by all of them. Or, as YKH puts it, "[o]ne timely value appeal covers all condemnees."

It is true, as GDOT contends, that "the right to appeal to a jury from a declaration of taking is absolutely conditional upon the filing of a timely notice of appeal in the superior court[] pursuant to OCGA § 32-3-14 and that not even the trial court is empowered to extend the period of time for filing the notice of appeal." (Citation and punctuation omitted.) *Cedartown North Partnership*, 296 Ga. App. at 55. Here, however, the Spencers did file a timely appeal; the issue is whether that timely appeal preserves any of YKH's appeal rights in the face of the latter's failure to timely appeal. In that regard,

this Court has held that a condemnee who fails to file a timely notice of appeal after being served in a condemnation proceeding may nevertheless join in an appeal filed by other condemnees. The reasoning . . . was that since the issue of value was going to be tried anyway, fundamental fairness dictated that the condemnee who had not filed a timely appeal, but whose interests would of necessity be adjudicated at the trial on the issue of value, be allowed to participate.

(Citations and punctuation omitted.) *Lil Champ Food Stores v. Dept. of Transp.*, 230 Ga. App. 715, 716 (1) (498 SE2d 94) (1998) (affirming trial court's decision allowing condemnee who failed to file a timely notice of appeal to join appeal timely filed by two other condemnees); see generally *Knight v. Dept. of Transp.*, 134 Ga. App. 332, 336 (2) (214 SE2d 418) (1975) (finding that where some joint property-owners were not served in condemnation proceedings, joint notices of appeal were not subject to dismissal even though filed after more than 30 days, and that "all parties at interest have a right . . . to participate as appellants"). YKH has not moved to join the Spencers' timely appeal. This does not end our inquiry, however.

In *Brown v. Dept. of Transp.*, 191 Ga. App. 321 (381 SE2d 532) (1989), the Department of Transportation instituted condemnation proceedings against a landowner. The landowner filed a timely notice of appeal regarding the valuation, but

the tenant filed an untimely notice of appeal, which the trial court dismissed. Id. at 321-322. The tenant then moved to dismiss and set aside the condemnation, and also moved to intervene. The trial court denied the motion to dismiss and set aside, but granted the motion to intervene "for the limited purpose" of allowing the tenant to assert a claim to any funds paid under the condemnation "with the proviso that 'said intervention *shall not constitute an appeal* in said case and appellant may not participate in the trial on the question of valuation.'" (Emphasis supplied.) Id. at 322. Even though nothing indicated that the tenant sought to join the timely appeal, this Court determined that the tenant was "entitled to participate in the appeal filed by his co-condemnee on the issue of compensation." Id. at 322 (1); see *Dept. of Transp. v. Morris*, 186 Ga. App. 673, 674-675 (368 SE2d 155) (1988) (where parties who were not properly served nonetheless filed notices of appeal, "[f]undamental fairness would therefore permit" party who was served, yet filed untimely notice of appeal, "to participate in the appeal"); compare *Blonder v. Dept. of Transp.*, 156 Ga. App. 711, 711-712 (275 SE2d 762) (1980) (upholding dismissal of tardy notices of appeal where none of the three condemnees had filed a timely appeal).

As a result, we reverse the dismissal of YKH's notices of appeal. We note, however, that our case law limits YKH's appellate rights in this context to the scope and survival of the Spencers' timely appeal. See *Whitfield v. Dept. of Transp.*, 248 Ga. App. 172, 173 (1) (546 SE2d 308) (2001) (finding that parties who failed to timely appeal on the issue of just compensation pursuant to OCGA § 32-3-14 were not entitled to join timely appeals by other parties because those other parties were not contesting the amount of compensation paid); *Lil Champ Food Stores*, 230 Ga. App. at 717 (1) (finding that where the party which had timely appealed had settled its case, "there was no requirement that [the party who had not timely appealed] be allowed to participate in a trial. To rule otherwise would be to allow [the party who had not timely appealed] to do indirectly that which it cannot do directly.").

(b) Because of our determination in Division (1) (a) that YKH's notices of appeal should not have been dismissed, we need not address the Condemnees' other arguments in this regard.

2. We turn now to the Condemnees' challenge to the trial court's grant of partial summary judgment to GDOT.

On appeal, the Condemnees assert, inter alia, that GDOT's construction increased the slope of the driveways entering the property, and that its erection of curbs at the property portals narrowed the entrances. These alterations, they argue, make it harder for large vehicles such as RVs to access the property. They also argue that the removal of a 12-foot access lane hinders ingress and egress to the property. Although the Condemnees present no argument regarding the additional amount of damages they contend they should receive, throughout their appellate brief, Condemnees point to differing valuation and mitigation damage assessments from GDOT's experts and their own experts. In particular, one of the Condemnees included in his damage assessment a piece of property owned by YKH that was not part of GDOT's condemnation action. The appellate briefs refer to this piece of property as "Parcel X," although it is not referenced or identified as such in the record. Both parties' appellate briefs aver that Parcel X lies to the west of Parcels 5 and 6. With these assertions in mind, we turn to the Condemnees' enumerations of error.

The Condemnees specifically enumerate as error the trial court's: (i) decision that a complete blockage of their access was a prerequisite to a finding of

condemnation damages to their easement of access; (ii) failure to "recognize their pre-condemnation appurtenant easement of access"; and (iii) failure to consider that the removal of a 12-foot paved access lane, installation of curbs that narrowed entrances, installation of a center line curb divider, and increases in the slope and grade of three driveways could, individually or together, "potentiate damage to [the Condemnees'] appurtenant easement of access via the access lane, regardless of whether those actions occurred on or off Appellants' property."

(a) As an initial matter, some of the Condemnees' arguments within this enumeration stray from, and expand upon, those enunciated in its enumerations of error. Specifically, the Condemnees argue that Parcels 5 and 6 are contiguous with Parcel X, the latter of which was not subject to the condemnation, and that Parcel X should thus have been included in GDOT's assessment of consequential damages. The Condemnees did not enumerate this lack of inclusion as error, however. It is well settled that "a party cannot expand its enumerations of error through argument or citation in its brief. Hence, [the Condemnees have] waived and abandoned this assertion of error for purposes of appeal." (Citation and punctuation omitted.) *Stockbridge Dental Group v. Freeman*, 316 Ga. App. 274, 275, n. 2 (728 SE2d 871)

(2012). The Condemnees also argue that they are entitled to have a jury consider alternative, potential, higher and better uses of the property and that such uses are not speculative. Again, this contention — which deals with possible future development of the property as commercial or mixed-use, rather than the access issues raised in the enumerations of error — represents an impermissible expansion of the enumerations of error and is waived. Id.

(b) The Condemnees first contend that the trial court erred "in holding that a complete blockage of Appellants' access was a prerequisite to a finding of condemnation damages to Appellants' easement of access." Because the trial court made no such determination, we find no error.

The Condemnees' enumeration addresses this contention in a single paragraph pointing to statements the trial court made at the summary judgment hearing in which it posited that the Condemnees were arguing that a paved shoulder or roadway had been part of the taking. The trial court asked, "Would that be even legal to drive on that road?" It then stated, "It's not legal to drive on that. . . . I guarantee you there is a traffic violation right there." Pretermitting whether these comments even address a complete blockage of access in the context the Condemnees argue, it is well settled

14

that "[w]hat the judge orally declares is no judgment until it has been put in writing and entered as such." (Citation and punctuation omitted.) *Titelman v. Stedman*, 277 Ga. 460, 461 (591 SE2d 774) (2003).

The Condemnees do not point to any finding or conclusion of law in the written order that would support their contention, nor do we find any. While the fact section of that order notes that "[e]ntire access to the property has not been cut off[,]" it makes no finding or legal conclusion to the effect that, as a prerequisite to damages, access to the property must be completely blocked. Rather, the trial court's order cites to well-settled case law finding that, so long as entire access has not been cut off *and* a property owner's means of ingress and egress are not substantially interfered with, then that owner is not entitled to consequential damages. The trial court cites to *Johnson v. Burke County*, 101 Ga. App. 747, 749 (115 SE2d 484) (1960), which quotes the following language from the Supreme Court's opinion in *State Hwy. Bd. v. Baxter*, 167 Ga. 124, 133 (144 SE 796) (1928), finding that a landowner "is not entitled, as against the public, to access to his land at all points in the boundary between it and the highway, if the entire access has not been cut off, *and* if he is offered a convenient access to his property and to improvements thereon, and his means of ingress and

15

egress are not substantially interfered with by the public." (Emphasis supplied.) We find no error.

(c) The Condemnees then argue that the trial court erred because it failed to find that (i) their loss of a 12-foot appurtenant easement of access lane, (ii) the installation of curbs that narrowed entrances to the property, as well as a center-line curb divider, and (iii) an increase in the slope of the three entrances accessing the property, either individually or together, resulted in compensable damages to the property. We agree in part and disagree in part.

> There are two elements of just and adequate compensation for a partial taking of property by condemnation: (1) the market value of the portion actually taken, and (2) the consequential damage, if any, to the remainder. The proper measure of consequential damages to the remainder is the diminution, if any, in the market value of the remainder in its circumstances just prior to the time of the taking compared with its market value in its new circumstance just after the time of taking.

*Continental Corp. v. Dept. of Transp.*, 185 Ga. App. 792, 793 (1) (366 SE2d 160) (1988), citing *Simon v. Dept. of Transp.*, 245 Ga. 478 (265 SE2d 777) (1980), and *Wright v. MARTA*, 248 Ga. 372, 376 (283 SE2d 466) (1981). "The right of access from a street to his land is a property right of the owner of land abutting on such street. It has been

16

called the 'easement of access,' and it is so far regarded as private property that not even the legislature can take it away and deprive the owner of it without compensation." (Punctuation omitted.) *Mayor &c. of Macon v. Wing*, 113 Ga. 90, 91 (38 SE 392) (1901) (upholding jury verdict compensating plaintiff where city narrowed a street and moved the sidewalk away from the property such that "access to the building owned by [plaintiff] was rendered more difficult").

Here, the Condemnees' enumeration addresses consequential damages related to increased difficulty of access. See generally *Lee v. City of Atlanta*, 219 Ga. App. 264, 266 (3) (464 SE2d 879) (1995) (distinguishing between loss of a property interest and inconvenience).

> The right of access, or easement of access, to a public road is a property right which arises from the ownership of land contiguous to a public road, and the landowner cannot be deprived of this right without just and adequate compensation being first paid. The easement consists of the right of egress from and ingress to the abutting public road and from there to the system of public roads.

(Punctuation omitted.) *Circle K General v. Dept. of Transp.*, 196 Ga. App. 616, 617 (396 SE2d 522) (1990), citing *MARTA v. Datry*, 235 Ga. 568, 575 (1) (220 SE2d 905) (1975). While it is true that a landowner may not be compensated for inconveniences

17

shared by the public in general — such as placement of a permanent dead-end, circuitry of travel, changes in traffic patterns or greater difficulty in ingress/egress caused by changes in traffic patterns — where a property owner's direct access is "totally eliminated," *Dept. of Transp. v. Taylor*, 264 Ga. 18, 20 (3) (b) (440 SE2d 652) (1994), or "substantially interfered with[,]" *Circle K General*, 196 Ga. App. at 618, it is "appropriate for [a] trier of fact to decide the extent of the impairment to existing access[.]" *Taylor*, 264 Ga. at 20 (3) (b); accord *Circle K General*, 196 Ga. App. at 618 (finding that "[w]hether a property owner has 'reasonable access' to the property under the circumstances and whether the existing access was 'substantially interfered with' are questions of fact to be decided by the jury.") (citation omitted).

Further, "evidence that changes to the adjacent road limited the ability for certain types of vehicles to access the property, where such access was 'critical' to the business conducted on the property[,]" has been deemed admissible even in condemnation cases involving changes in traffic patterns. See *Dept. of Transp. v. 0.095 Acres of Land*, 368 Ga. App. 426, 432-433 (3) (b) (890 SE2d 301) (2023). Compensable impairment of access must be special to the landowners, however, "not merely damage that is different from that of the general public in degree only, and not in

kind." (Punctuation omitted.) *Circle K General*, 196 Ga. App. at 618, citing *Tift County v. Smith*, 219 Ga. 68, 72 (131 SE2d 527) (1963); accord *Dept. of Transp. v. Bridges*, 268 Ga. 258, 259-260 (486 SE2d 593) (1997) (reversing Court of Appeals opinion finding landowner was entitled to compensation where, although road closure made landowner's access to property "more circuitous" and changed traffic flow pattern such that forecasted commercial development was altered, landowner was not entitled to compensation even though his "inconvenience . . . may be greater in degree than that of the general public, [because] he has lost no property right for which he is entitled to compensation").

(i) *The 12-foot access lane*. The Condemnees argue that the trial court erred in "failing to recognize" their pre-condemnation appurtenant easement of access, and in finding that the removal of a 12-foot paved access lane impaired access to the property, resulting in damages.

In discussing the 12-foot access lane throughout their appellate brief, the Condemnees do provide record citations. Those citations, however, point us to photographs, some of which are so poorly reproduced that what they depict is

indiscernible. Other photographs or images — because they are unidentified and unexplained — shed no light upon the condition of the property either before or after the taking. See *Continental Corp.*, 185 Ga. App. at 793 (finding that the proper measure of consequential damages requires comparing the remainder property's "circumstances just prior" to the taking with those "just after" the taking). It is also not clear from the Condemnees' citations to deposition evidence — referencing, at various points, a "paved shoulder" and a "right-hand turn lane"[5] — whether these are the same as the 12-foot access lane.

In any event, the Condemnees contend that the access lane "was used to deliver and collect U. S. mail, and to permit vehicles to slow down for ease of accessing Appellants' property and to accelerate for ease of merging onto the state highway." GDOT cites to evidence that this area also was used as "a school bus pullover." It is clear from all this evidence that the access lane served not just the Condemnees, but

---

[5] The trial court's order, in the same paragraph in which it addresses the 12-foot access lane, finds that the Condemnees "did not come forward and present admissible evidence as required by OCGA § 9-11-56 (e) to dispute the affidavit of Mike Govus, DOT District 6, Assistant Traffic Engineer, that no turn lane existed at the Subject Parcel." The Govus affidavit avers that there was "never a right turn lane" accessing the property, as per GDOT's configuration and striping standards. The Condemnees do not address the trial court's finding on this point in their appellate brief and it is not entirely clear whether the right-turn lane and the 12-foot access lane are the same.

also the general public, and that all would have been affected by changes in traffic flow and traffic patterns caused by its removal, even if the changes wrought on the Condemnees were greater. The Condemnees point to nothing showing they experienced inconvenience of access "special" to them, or that there is any question of fact regarding whether they were specially affected. See *Circle K General*, 196 Ga. App. at 618. It is well settled that "greater difficulty in ingress and egress which is occasioned by a change in traffic patterns is not an appropriate item of damages in proceedings such as this." (Citation and punctuation omitted.) *Taylor*, 264 Ga. at 20 (3) (b) (reversing Court of Appeals decision allowing introduction of evidence of inconvenience by landowner whose access to Moreland Avenue in Atlanta was negatively affected by Department of Transportation project that changed circuitry, volume, and flow of traffic, because changes also affected the general public and were not special to the landowner); see also *Bridges*, 268 Ga. at 259-260. We find no error.

(ii) *The installation of curbs*. The Condemnees cite to expert testimony that the three entrance portals to their property did not have curbs initially, and that GDOT's addition of curbing effectively narrowed or constricted these entrances because people

21

could no longer drive on the grass or gravel, making it more difficult for large vehicles such as trailers to enter their property.

In response, GDOT points to evidence showing that prior to the taking, Parcel 5 was accessed by an approximately 12-foot-wide paved drive[6] and Parcel 6 was accessed by two approximately 15-foot-wide paved drives. GDOT's expert, Ricardo Palacios, deposed that after one of the YKH owners expressed concern about the width of the driveways, he tried to get GDOT to widen the Parcel 5 driveway to 24 feet, "to be the same as the other two at 24-foot." However, it was already too late in the construction process to accomplish this. The Condemnees' expert, Bruce Penn, deposed that GDOT did not narrow the two driveways on Parcel 6; he was unsure about the driveway on Parcel 5.

Even if the driveways are wider or the same size as before, a question of fact still exists regarding whether and to what degree the curbing that Condemnees contend narrowed the entrance portals substantially impeded their access to the property. In *DeKalb County v. Glaze*, 189 Ga. App. 1 (375 SE2d 66) (1988), a landowner had unimpeded access to his store before the county installed curbs that hindered parking

---

[6] Presumably, this is different from the 12-foot paved access lane. Again, the record evidence is unclear.

and made it impossible for large trucks to make deliveries without driving over the curbs. Id. at 1-2. This Court found that "[w]hether the openings left in the curbs by the county provided reasonable access to the property under the circumstances and whether the existing access was substantially interfered with were questions of fact to be resolved by the jury." (Citation and punctuation omitted.) Id. at 2 (1); see also *Dougherty County v. Hornsby*, 213 Ga. 114, 115 (1), 117 (1) (97 SE2d 300) (1957) (finding petitioner had stated a cause of action, as against a general demurrer, where he alleged that county's installation of concrete curbing impaired ingress and egress and reduced property's commercial value); *Wing*, 113 Ga. at 92 (finding jury verdict awarding damages not contrary to law where evidence showed access to plaintiff's building was rendered more difficult by, among other things, the narrowing of a street because of the addition of a new sidewalk and curbing). We find that a jury must determine whether the Condemnees' access was substantially impaired.

(iii) *The increased slopes and grades*. The Condemnees argue that GDOT's reconstruction increased the slope and grade of the entrances to their property, impeding the ingress and egress of large vehicles such as RVs.

23

The Condemnees point to testimony from their experts, arguing that "replacing a relatively level entrance with a 16.97% grade at the roundabout caused damage (potentiated with other construction changes)" and that this evidence is admissible.[7] It is undisputed that GDOT constructed a roundabout adjacent to the Condemnees' property. The Condemnees contend that after its construction, the three entrance portals to Parcels 5 and 6 were no longer level with GDOT's right of way. The Condemnees argue that one of the roadways now has a 16.97 percent grade. It is unclear from the record exactly how much that particular grade increased, however, as the Condemnees' record citations show only that the three roadways' prior grades were between 4.60 percent and 5.91 percent. They do not identify which prior grade applies to the roadway that is now at 16.97 percent. The Condemnees provide no accurate record citations for the post-construction grades of the other two roadways. One of the Condemnees' experts testified, however, that the slopes and grades were "excessive[.]" Although there was testimony that the new slope of one of the driveways was so steep that it damaged some vehicles and RVs, once tearing off a

_____

[7] The Condemnees point to nothing in the record indicating that the trial court excluded this evidence.

24

bumper, the damage occurred before GDOT's contractor had regraded the driveway.[8] The regrading lowered that incline, although it is "still pretty steep[]" and the back ends and bumpers of some RVs still drag on the incline. Neither party points to any evidence that the later version of the regraded driveway continued to cause actual damage to vehicles.

GDOT argues, citing *BIK Assocs. v. Troup County*, that the Condemnees have failed to show a substantial interference with access. 236 Ga. App. 734, 734-735 (1) (513 SE2d 283) (1999) (finding that trial court did not err in excluding evidence of consequential damages, including an increase in elevation on driveways accessing property, where driveways remained in same location and BIK had "substantially the same direct access" to a public road as it previously had to a highway that had been rerouted). Here, however, the Condemnees are asserting that large vehicles like RVs, which are central to their business, at least on one of the parcels, experience impeded access to the property in the form of scraping the vehicles' back ends because of the steeper slope. This evidence relates to a "physical alteration or obstruction to [the Condemnees'] former (pre-take) access[.]" *Taylor*, 264 Ga. at 21 (3) (c) (contrasting

[8] It appears from the record that GDOT regraded this driveway multiple times before the later regrading referenced above.

a physical alteration impeding access to a landowner's property with changes in traffic patterns that affect the general public).[9] Under the facts presented in this case, whether or not the increased slope amounts to a substantial impairment of access is a matter for jury determination. See *Circle K General*, 196 Ga. App. at 618; *Glaze*, 189 Ga. App. at 2 (1).

In sum, we reverse the trial court order dismissing YKH's untimely notices of appeal. We also reverse the portions of the trial court's order granting partial summary judgment to GDOT on the issues of consequential damages resulting from the increased slopes and grades on the property and the narrowed entrance portals,

---

[9] One of GDOT's experts, Matthew Gottschalk, was asked in depositions whether the changes GDOT made to the Condemnees' driveways impeded access. He responded, "I think it varies." He then discussed four driveways. None of the parties points us to record evidence which would allow this Court to discern which three of those four driveways are at issue in this case. In any event, Gottschalk deposed that one of the driveways was "unaffected[;]" another was "full access in the before and after" of the GDOT construction; yet another driveway was "somewhat compromised in its ability to perform as a full-access driveway in both the before and the after scenario[;]" and the last driveway "also has problems being a full-access driveway in the before scenario." Given this testimony, a jury would likewise need to consider whether GDOT's construction substantially impaired access that may have been somewhat impaired prior to any of GDOT's changes.

as those are issues for jury determination. We affirm the remainder of the grant of partial summary judgment.

*Judgment affirmed in part and reversed in part. Doyle, P. J., and Watkins, J., concur.*